IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FOAMEX INTERNATIONAL INC., *et al.*, | ) | Case No. 09-10560 (KJC) |
| | ) | |
| Debtors. | ) | *RE DOC NO. 65* |

### ORDER (A) AUTHORIZING DEBTORS TO OBTAIN INTERIM POSTPETITION FINANCING AND TO GRANT SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 105, 364(c) AND 364(d); (B) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL; (C) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; (D) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363; AND (E) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001

This matter having come before the Court upon consideration of the motion (the "Motion") of Foamex L.P. ("Foamex" or the "Borrower"), Foamex International Inc., Foamex Latin America, Inc., Foamex Asia, Inc., FMXI, LLC, Foamex Carpet Cushion LLC, Foamex Canada Inc., and Foamex Mexico, Inc. (collectively, the "Guarantors"), the above-captioned debtors and debtors in possession (each a "Debtor", and collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively, the "Cases"), dated February 18, 2009, pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking, among other things:

(1)    authorization for Borrower to obtain up to $95,000,000 of postpetition financing (the "DIP Financing"), with up to $20,000,000 new money available on an interim basis for a period through and including the date of the Final Hearing (as defined below) from MatlinPatterson Global Advisers LLC ("MPGA," together with its managed funds or controlled entities, "MP"), for itself and the other financial institutions party to the DIP Loan Agreement (as defined below) as lenders (each individually, a "DIP Lender", and collectively with Bank of America, N.A., as Agent[1] (the "DIP Agent") and lender, and the other lenders

---

[1] Unless defined in this Interim Order, capitalized terms used herein are defined in the DIP Loan Agreement.

(collectively, including Bank of America, N.A., the "Prepetition Revolving Lenders") party to that certain Revolving Credit Agreement, dated as of February 12, 2007 (the "Prepetition Revolving Credit Agreement"), the "DIP Lenders"), in accordance with the lending formulae, sublimits, terms and conditions set forth in the DIP Loan Agreement, in accordance with the Cash Budget (as defined below) and in accordance with this interim order (the "Interim Order"). The DIP Financing shall be secured by postpetition security interests in and liens upon all of the Collateral pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code;

(2)    authorization for Borrower to enter into the Debtor-in-Possession Credit Agreement, substantially in the form annexed to the Motion as Exhibit A, by and among the Borrower, the Guarantors, the DIP Agent and each of the DIP Lenders (as hereafter amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "DIP Loan Agreement"), together with all other agreements, documents and instruments delivered or executed in connection therewith (as may be supplemented, amended or modified from time to time in accordance with the terms hereof and thereof, and together with the DIP Loan Agreement, the "DIP Documents") and to perform such other and further acts as may be necessary or appropriate in connection with the DIP Documents;

(3)    authorization for the rollup of obligations in respect of the prepetition Swap Contracts, Letters of Credit, and any other remaining Prepetition AR Obligations (as defined below) outstanding under the Prepetition Revolver Documents (as defined below) into DIP Obligations;

(4)    the grant to the DIP Agent, for the benefit of itself and the other DIP Lenders, of superpriority administrative claim status pursuant to section 364(c)(1) of the Bankruptcy Code in respect of all DIP Obligations;

(5)    authorization for the Debtors (a) to use ABL Collateral (defined below) and cash collateral (as such term is defined in section 363 of the Bankruptcy Code, "Cash Collateral") and (b) to provide adequate protection (solely to the extent of any diminution in the value of their respective collateral) to the lenders under the First Lien Term Loan Facility (the "Prepetition First Lien Term Lenders") and the lenders under the Second Lien Term Loan Facility (the "Prepetition Second Lien Term Lenders") in the form of replacement liens and superpriority administrative claim status;

(6)      subject to entry of the Final Order, the waiver by the Debtors of any right to seek to surcharge against the Collateral pursuant to section 506(c) of the Bankruptcy Code;

(7)      to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of this Interim Order (a) authorizing the Borrower, on an interim basis, to borrow under the DIP Loan Agreement up to $20,000,000 of loans to be used for working capital, general expenditures (including capital expenditures) and general corporate purposes of the Debtors pending the Final Hearing, (b) authorizing the rollup of obligations in respect of the prepetition Swap Contracts, Letters of Credit, and any other Prepetition AR Obligations outstanding under the Prepetition Revolver Documents into DIP Obligations, (c) authorizing the Debtors to use ABL Collateral and  Cash Collateral and (d) granting adequate protection to the Prepetition First Lien Term Lenders and the Prepetition Second Lien Term Lenders; and

(8)      to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") to consider entry of an order (the "Final Order") authorizing the Borrower on a final basis to borrow the balance of the DIP Financing and to continue to use the Cash Collateral and the ABL Collateral.

The Interim Hearing on the Motion having been held by this Court on February 20, 2009.

Notice of the Motion, the relief requested therein, and the Interim Hearing (the "Notice") has been served by the Debtors in accordance with Rule 4001(c) on (i) the DIP Agent, (ii) the DIP Lenders, (iii) the Revolver Agent (defined below) and the Prepetition Revolving Lenders, (iv) the agent under the First Lien Term Loan Facility (the "Prepetition First Lien Term Agent"), (v) the agent under the Second Lien Term Loan Facility (the "Prepetition Second Lien Term Agent"), (vi) the United States Trustee for the District of Delaware (the "U.S. Trustee"), (vii) the holders of the twenty-five (25) largest unsecured claims against the Debtors' Estates (the "25 Largest Unsecured Creditors"), (viii) the Internal Revenue Service, (ix) all appropriate state taxing authorities and (x) certain other parties identified in the certificate of service filed with the Court, including, without limitation, all creditors who have filed or recorded prepetition liens or security interests against any of the Debtors' assets (collectively, the "Noticed Parties").

Upon the record made by the Debtors at the Interim Hearing, including the Motion and the filings and pleadings in the Cases, and good and sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[2]

A.    Petition. On February 18, 2009 (the "Petition Date"), each Debtor filed a voluntary petition (the "Petition") under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.    Jurisdiction and Venue. The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M). Venue of the Cases and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Notice. Notice of the Motion, the Interim Hearing and the relief granted under this Interim Order has been given by the Debtors pursuant to Bankruptcy Rules 4001(b) and (c).

D.    Debtors' Acknowledgements and Agreements. The Debtors admit, stipulate, acknowledge and agree that:

(i)    *Prepetition Revolving Credit Agreement.* Prior to the commencement of the Cases, Bank of America, N.A. (the "Revolver Agent"), as agent and lender, and the Prepetition Revolving Lenders made loans, advances and provided other financial accommodations to Borrower pursuant to the terms and conditions set forth in the Prepetition Revolving Credit Agreement and the other agreements, documents and instruments executed and/or delivered with, to, or in favor of the Revolver Agent and/or any of the Prepetition Revolving Lenders, including, without limitation, all other security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, and all other related agreements, documents and instruments executed and/or delivered in connection therewith or related thereto (all of the foregoing, together with the Prepetition Revolving Credit Agreement, as all of the same have heretofore been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, collectively the "Prepetition Revolver Documents").

---

[2] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact pursuant to Bankruptcy Rule 7052.

(ii)    *Prepetition AR Obligations.*  As of the Petition Date, the aggregate amount of obligations outstanding under the Prepetition Revolver Documents was not less than $39,000,000, consisting of Letters of Credit in the amount of $25,600,000 and exposure under the Swap Contracts in the amount of $13,400,000, plus accrued and unpaid interest thereon and fees and expenses as provided in the Prepetition Revolving Credit Agreement (collectively, the "Prepetition AR Obligations").  The Prepetition AR Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of the Debtors, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and the Debtors do not possess, shall not assert and hereby forever release any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Prepetition AR Obligations;

(iii)    *Prepetition Revolver Collateral.*  As of the Petition Date, the Prepetition AR Obligations were fully secured by valid, perfected, enforceable and non-avoidable first priority security interests in and liens granted by the Debtors to the Revolver Agent, for the benefit of itself and the other Prepetition Revolving Lenders, upon the accounts of the Debtors, the Debtors' right, title and interest in the lockbox accounts and other deposit and bank accounts in which proceeds of accounts may be deposited, and proceeds of the foregoing (as further described in the Prepetition Revolver Documents, the "ABL Collateral"), subject only to certain permitted liens set forth in section 7.14 of the Prepetition Revolving Credit Agreement to the extent that such security interests, liens or encumbrances are (a) valid, perfected and non-avoidable security interests, liens or encumbrances existing as of the Petition Date and (b) senior to and have not been or are subject to being subordinated to the Revolver Agent's and the Prepetition Revolving Lenders' liens on and security interests in the ABL Collateral or otherwise avoided, and, in each instance, only for so long as and to the extent that such encumbrances are and remain senior and outstanding.  In addition, the Prepetition AR Obligations were secured by valid, perfected enforceable and non-avoidable third priority liens on the Other Prepetition Collateral (as defined in the Motion).  The Debtors do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Revolver Agent's and the

Prepetition Revolving Lenders' liens, claims or security interests in the ABL Collateral and Other Prepetition Collateral.

(iv) *Prepetition First Lien Term Loans.* Prior to the commencement of the Cases, the Prepetition First Lien Term Agent and the Prepetition First Lien Term Lenders made loans, advances and provided other financial accommodations to Borrower pursuant to the terms and conditions set forth in the First Lien Term Loan Facility and the other agreements, documents and instruments executed and/or delivered with, to, or in favor of the Prepetition First Lien Term Agent or any Prepetition First Lien Term Lender, including, without limitation, all other security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, and all other related agreements, documents and instruments executed and/or delivered in connection therewith or related thereto (all of the foregoing, together with the First Lien Term Loan Facility, as all of the same have heretofore been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, collectively the "Prepetition First Lien Term Loan Documents").

(v) *Prepetition First Lien Term Loan Obligations.* As of the Petition Date, the aggregate amount of all loans and other prepetition obligations under and in connection with the Prepetition First Lien Term Loan Documents was not less than $324,800,000, plus accrued and unpaid interest thereon and fees and expenses as provided in the First Lien Term Loan Facility (collectively, the "Prepetition First Lien Term Loan Obligations");

(vi) *First Lien Term Collateral.* As of the Petition Date, the Prepetition First Lien Term Loan Obligations were secured by valid, perfected, enforceable and non-avoidable security interests in and liens upon the Debtors' personal property, including without limitation junior and subordinate liens and security interests in the ABL Collateral (collectively, the "Prepetition First Lien Term Collateral"), subject only to certain permitted liens set forth in section 7.01 or Schedule 7.01 of the First Lien Term Loan Facility.

(vii) *Prepetition Second Lien Term Loans.* Prior to the commencement of the Cases, Law Debenture Trust Company of New York, as successor agent, and the Prepetition Second Lien Term Lenders made loans, advances and provided other financial accommodations to Borrower pursuant to the terms and conditions set forth in the Second Lien Term Loan Facility and the other agreements, documents and instruments executed and/or delivered with, to, or in favor of the Prepetition Second Lien Term Agent or any

Prepetition Second Lien Term Lender, including, without limitation, all other security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, and all other related agreements, documents and instruments executed and/or delivered in connection therewith or related thereto (all of the foregoing, together with the Second Lien Term Loan Facility, as all of the same have heretofore been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, collectively the "Prepetition Second Lien Term Loan Documents").

(viii)    *Prepetition Second Lien Term Loan Obligations.* As of the Petition Date, the aggregate amount of all loans and other prepetition obligations under and in connection with the Prepetition Second Lien Term Loan Documents was not less than $47,100,000, plus accrued and unpaid interest thereon and fees and expenses as provided in the Second Lien Term Loan Facility (collectively, the "Prepetition Second Lien Term Loan Obligations");

(ix)    *Second Lien Term Collateral.* As of the Petition Date, the Prepetition Second Lien Term Loan Obligations were secured by valid, perfected, enforceable and non-avoidable junior and subordinate security interests in and liens upon the Debtors' personal property, including without limitation third-priority and subordinate liens and security interests in the ABL Collateral behind the Prepetition Revolving Lenders and the Prepetition First Lien Term Lenders (collectively, the "Prepetition Second Lien Term Collateral"), subject only to certain permitted liens set forth in section 7.01 or Schedule 7.01 of the Second Lien Term Loan Facility.

(x)    *Intercreditor Agreement.* The respective rights, obligations and priorities of the claims and interests of the Prepetition Revolving Lenders, the Prepetition First Lien Term Lenders, and the Prepetition Second Lien Term Lenders in the ABL Collateral and Other Prepetition Collateral are subject to the terms of the Intercreditor Agreement dated as of February 12, 2007 (the "Intercreditor Agreement"), among the Borrower, the guarantors party thereto, the Revolver Agent, the Prepetition First Lien Term Agent, the Prepetition Second Lien Term Agent, and the control agent party thereto.  Specifically, Section 6.1 of the Intercreditor Agreement provides, inter alia, that all liens and security interests with respect to the ABL Collateral securing all obligations and amounts under the First Lien Term Loan Facility and the Second Lien Term Loan Facility are subordinated, in all respects, to all liens and security

interests with respect to the ABL Collateral securing all obligations and amounts under the Prepetition Revolver Documents. In addition, the Intercreditor Agreement provides that the Prepetition First Lien Term Agent, on behalf of the Prepetition First Lien Term Lenders, and Prepetition Second Lien Term Agent, on behalf of the Prepetition Second Lien Term Lenders, (a) may not object to any postpetition financing agreed to by the Prepetition Revolving Lenders provided, among other things, that the Prepetition First Lien Term Lenders and Prepetition Second Lien Term Lenders receive replacement liens in the ABL Collateral with the same priorities as in the Intercreditor Agreement, (b) may not object to the Revolver Agent or the Prepetition Revolving Lenders permitting the Debtors to use Cash Collateral in connection with such postpetition financing and (c) must subordinate their liens to such postpetition financing with respect to the ABL Collateral.

        E.    Findings Regarding the DIP Financing.

        (i)    The Debtors have requested from the DIP Agent and the DIP Lenders, and the DIP Agent and the DIP Lenders are willing to extend, certain loans, advances and other financial accommodations on the terms and conditions set forth in this Interim Order and the DIP Documents.

        (ii)    The Debtors do not have sufficient available sources of working capital, including cash collateral, to operate their businesses in the ordinary course without the financing requested under the Motion. The Debtors' ability to maintain business relationships with their vendors, suppliers and customers, to pay their employees, and to otherwise fund their operations is essential to the Debtors' continued viability as the Debtors seek to maximize the value of the assets of the Estates (as defined below) for the benefit of all creditors of the Debtors. The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed DIP Financing as set forth in this Interim Order and the DIP Documents is vital to the preservation and maintenance of the going concern values of the Debtors. Accordingly, the Debtors have an immediate need to obtain the postpetition financing in order to, among other things, permit the orderly continuation of the operation of their businesses, minimize disruption of their business operations, and preserve and maximize the value of the Debtors' bankruptcy estates (as defined under section 541 of the Bankruptcy Code, the "Estates").

(iii)    The Debtors are unable to procure financing in the form of unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code, as an administrative expense under section 364(a) or (b) of the Bankruptcy Code, or in exchange for the grant of postpetition liens and administrative expense priority pursuant to sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code, without the grant of the DIP Liens and Superpriority Claims (each as defined below). Additionally, the Debtors have been unable to procure the necessary financing on terms more favorable than the DIP Financing offered by MP and the DIP Lenders.

(iv)    The rollup of the obligations in respect of the prepetition Swap Contracts, Letters of Credit, and any other Prepetition AR Obligations outstanding under the Prepetition Revolving Credit Agreement into the DIP Obligations increases the Debtors' availability under the DIP Financing and is thus in the best interest of the Debtors and their Estates.

(v)    The terms of the DIP Financing and the use of the ABL Collateral (including Cash Collateral) pursuant to this Interim Order are fair and reasonable (particularly considering the current economic environment), reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(vi)    The DIP Documents and the use of Cash Collateral (including the ABL Collateral) have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, MP, the DIP Agent, the other DIP Lenders, the Revolver Agent, and the Prepetition Revolving Lenders and all of the Debtors' obligations and indebtedness arising under or in connection with the DIP Financing, including without limitation, (a) all loans made to, and all letters of credit issued for the benefit, of the Debtors pursuant to the DIP Loan Agreement and (b) all other obligations of the Debtors under the DIP Documents and this Interim Order owing to any DIP Lender or the DIP Agent shall be deemed to have been extended by MP, the DIP Lenders and the DIP Agent in "good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protections of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified on appeal or otherwise.

(vii)     The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Absent granting the relief set forth in this Interim Order, the Estates will be immediately and irreparably harmed. Consummation of the DIP Financing and the use of the Cash Collateral in accordance with this Interim Order and the DIP Documents are, therefore, in the best interests of the Estates.

(viii)    The Debtors have prepared and delivered to MP, the DIP Lenders and the DIP Agent an initial Cash Budget (as defined in the DIP Loan Agreement). Such Cash Budget has been thoroughly reviewed by the Debtors and sets forth, among other things, the thirteen (13) week cash flow forecast for the periods covered thereby. The Debtors represent that they believe, based on current information, estimates and circumstances (and provided that the amounts in the Cash Budget are funded), that the Cash Budget (a) is reasonable and should be achievable in accordance with the terms of the DIP Documents and this Interim Order and (b) should allow the Debtors to operate at all times during these Cases without the accrual of unpaid administrative expenses, including anticipated professional fees and expenses. MP, the DIP Lenders and the DIP Agent are relying upon the Debtors' compliance with the Cash Budget, the other DIP Documents and this Interim Order in determining to enter into the DIP Financing provided for herein.

(ix)     As a result of the DIP Financing, the value of the ABL Collateral and the Other Prepetition Collateral will be enhanced, protected and preserved for the benefit of the Prepetition First Lien Term Lenders and the Prepetition Second Lien Term Lenders. Based on the enhanced value to the Debtors' Estates from the DIP Financing, together with the Replacement Liens and Priority Claims (as each term is defined below) to be granted to the Prepetition First Lien Term Agent, on behalf of the Prepetition First Lien Term Lenders, and the Prepetition Second Lien Term Agent, on behalf of the Prepetition Second Lien Term Lenders, pursuant to this Interim Order, sufficient adequate protection is being provided to the extent required under sections 361, 363 and 364 of the Bankruptcy Code and additional adequate protection is not required. In addition, the DIP Financing and use of ABL Collateral and Cash Collateral are in accordance with and as described in Section 6.1 of the Intercreditor Agreement. As a result, the Prepetition First Lien Term Agent (on behalf of the Prepetition First Lien Term Lenders) and the Prepetition Second Lien Term Agent (on behalf of the Prepetition Second Lien

Term Lenders) may not, under the terms of the Intercreditor Agreement, object to the DIP Financing and accompanying use of Cash Collateral.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

SECTION 1.    Authorization and Conditions to Financing.

1.1    Motion Granted. The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this Interim Order.

1.2    Authorization to Borrow and Use Loan Proceeds; Rollup of Prepetition AR Obligations. Pending entry of the Final Order, the Borrower is authorized to borrow under the DIP Loan Agreement up to an aggregate principal amount of $20,000,000 plus the amount of the Prepetition AR Obligations, for working capital, general expenditures (including capital expenditures) and general corporate needs and fees and expenses in connection with the DIP Financing and the Cases, all in accordance with the Cash Budget approved by MP and the DIP Agent as required by the DIP Documents. On the Closing Date, the Prepetition AR Obligations shall be deemed issued and outstanding under the DIP Loan Agreement as DIP Obligations, and, upon entry of the Final Order, the Prepetition AR Obligations, along with any other obligations under the Prepetition Revolver Documents, shall be deemed fully paid and all commitments thereunder terminated. Notwithstanding anything to the contrary contained in this Interim Order or the DIP Documents, this Court expressly reserves the right to unwind the roll-up of the Prepetition AR Obligations into DIP Obligations or to order other appropriate relief against the Revolver Agent and the Prepetition Revolving Lenders (including reallocation of payments or disgorgement) in the event there is a timely (in accordance with section 5.3 hereof) and successful challenge by any party in interest to the validity, enforceability, extent, perfection or priority of the Revolver Agent's liens in the ABL Collateral or Other Prepetition Collateral, to the amount, validity, enforceability of the Prepetition AR Obligations or to the value of the Revolver Agent's lien in the ABL Collateral and the Other Prepetition Collateral as of the Petition Date.

1.3    Financing Agreements.

1.3.1    Authorization. The Debtors are hereby authorized and directed to enter into, execute, deliver, perform, and comply with all of the terms, conditions and covenants in the DIP Documents and any related instruments and documents that MP or the DIP Agent

determines to be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Documents, including, without limitation:

        a)      the DIP Loan Agreement;

        b)      the other DIP Documents;

        c)      the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in such form as the Debtors, MP, the DIP Agent, and the DIP Lenders may agree, and no further approval of this Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees paid in connection therewith) that do not (A) shorten the maturity of the Loans, (b) increase the Commitments or the rate of interest payable on the Loans, or (c) change any Event of Default, add any covenants or amend the covenants therein in any such case to be materially more restrictive to the Debtors; provided, however, that a copy of any amendment, waiver, consent or other modification to the DIP Documents shall be filed by the Debtors with the Court and served by the Debtors on (i) the U.S. Trustee, (ii) any statutory committee of unsecured creditors appointed in the Cases, if any (the "Committee"), (iii) counsel to the Revolver Agent, (iv) counsel to the Prepetition First Lien Term Agent, and (v) counsel to the Prepetition Second Lien Term Agent; and

        d)      the non-refundable payment to MP and to the DIP Agent of the fees set forth in the DIP Documents; and

        e)      the payment to the LC Lenders of all fees payable with respect to prepetition Letters of Credit outstanding under the Prepetition Revolving Credit Agreement and accruing through the Closing Date.

        1.3.2   Approval. Upon execution and delivery, the DIP Documents shall be approved to the extent necessary to implement the terms and provisions of this Interim Order and the DIP Documents shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with the terms of this Interim Order and the DIP Documents. No obligation, payment, transfer or grant of security under the DIP Documents or this Interim Order shall be stayed, voidable, avoidable, or recoverable under the DIP Documents or under any applicable nonbankruptcy law (including without limitation, under sections 502(d) and 548 of the Bankruptcy Code or under any applicable state uniform Fraudulent Transfer Act, Uniform

Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

      1.4     Payments and Application of Payments. The Debtors are authorized and directed to make all payments and transfers of Estate property to the DIP Agent and the DIP Lenders as provided, permitted and/or required under the DIP Documents, which payments and transfers, subject to section 5.3 hereof, shall not be avoidable or recoverable from DIP Agent or any DIP Lender under sections 547, 548, 550, 553 or any other section of the Bankruptcy Code, or any other claim, charge, assessment or other liability, whether by application of the Bankruptcy Code, other law or otherwise. All proceeds of the Collateral received by the DIP Agent or the DIP Lenders, and any other amounts or payments received by DIP Agent or the DIP Lenders in respect of the DIP Obligations, shall be applied or deemed to be applied by the DIP Agent and the DIP Lenders in accordance with the DIP Documents. Without limiting the generality of the foregoing, the Debtors are authorized and directed, without further order of the Court, to pay or reimburse the DIP Agent and the DIP Lenders for all present and future costs and expenses, including, without limitation, all professional fees, consultant fees and legal fees and expenses paid or incurred by DIP Agent or the DIP Lenders in connection with the financing transactions as provided in this Interim Order and the DIP Documents, all of which shall be included as part of the principal amount of the DIP Obligations and secured by the Collateral; provided, however, that ten (10) days notice of all such costs and expenses shall be provided to the U.S. Trustee and the Committee and, in absence of an objection filed with this Court by either the UST or the Committee during such ten-day period, the Debtors are authorized and directed to pay such costs and expenses.

      1.5     Continuation of Prepetition Procedures. All prepetition practices and procedures for the payment and collection of proceeds of the Collateral, the turnover of cash, the delivery of property to the DIP Agent and the DIP Lenders and funding pursuant to the DIP Documents and the Swap Contracts are hereby approved and shall continue without interruption after the commencement of these Cases.

SECTION 2. Postpetition Lien; Superpriority Administrative Claim Status.

      2.1     DIP Liens.

      2.1.1     To secure the prompt payment and performance of the obligations of the Debtors under the DIP Documents and this Interim Order owing to the DIP Lenders

(collectively, the "DIP Obligations"), effective and perfected upon the date of this Interim Order and without the necessity of execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or similar documents, or the possession or control by the DIP Agent of any property, the following security interests and liens are hereby granted to the DIP Agent for its own benefit and for the benefit of the DIP Lenders (all property identified in clauses (a) and (b) below being collectively referred to as the "DIP Liens"), subject only to the Carve Out Expenses:

a)    Liens Priming the Liens of the Prepetition First Lien Term Lenders and Prepetition Second Lien Term Lenders. Pursuant to section 364(d)(1) of the Bankruptcy Code and in accordance with and as permitted by the terms of the Intercreditor Agreement, a valid, binding, continuing, enforceable, fully-perfected first priority, senior priming lien on, and security interest in, the ABL Collateral. The DIP Liens on the ABL Collateral shall be senior in all respects to the security interests in, and liens on, the ABL Collateral of the Prepetition First Lien Term Agent (on behalf of the Prepetition First Lien Term Lenders) and the Prepetition Second Lien Term Agent (on behalf of the Prepetition Second Lien Term Lenders), including, without limitation, in each instance, the Adequate Protection Liens (as defined below), but shall be junior to any valid, perfected and unavoidable security interests in and liens on the ABL Collateral that were senior to the liens of the Prepetition First Lien Term Agent (on behalf of the Prepetition First Lien Term Lenders) and the Prepetition Second Lien Term Agent (on behalf of the Prepetition Second Lien Term Lenders) as of the Petition Date, including as permitted by section 546(b) of the Bankruptcy Code.

b)    Liens Senior to Certain Other Liens. The DIP Liens and the Adequate Protection Liens shall not be (i) subject or subordinated to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their Estates under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date or (ii) subordinated to or made *pari passu* with any lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

2.1.2    Postpetition Lien Perfection. This Interim Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the DIP Liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing,

registration, recording or possession of the Collateral, or other act to validate or perfect such security interest or lien (a "Perfection Act"). Notwithstanding the foregoing, if the DIP Agent shall, in its sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, the DIP Agent is authorized to perform such act, and the Debtors are authorized and directed to perform such act to the extent necessary or required by the DIP Agent, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Interim Order notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law. The DIP Agent and DIP Lenders may choose to file, record or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Interim Order in accordance with applicable law. Should the DIP Agent so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the DIP Liens and the Adequate Protection Liens granted herein by virtue of the entry of this Interim Order.

2.1.3    Nullifying    Prepetition    Restrictions    to    DIP    Financing. Notwithstanding anything to the contrary contained in any prepetition agreement, contract, lease, document, note or instrument to which any Debtor is a party or under which any Debtor is obligated, except as otherwise permitted under the DIP Documents, any provision that restricts, limits or impairs in any way any Debtor from granting the DIP Agent and the DIP Lenders security interests in or liens upon the ABL Collateral under the DIP Loan Agreement or this Interim Order, or otherwise entering into and complying with all of the terms, conditions and provisions hereof or the other DIP Documents shall not (i) be effective and/or enforceable against any such Debtor(s), the DIP Agent and the DIP Lenders or (ii) adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to the DIP Agent and the DIP Lenders pursuant to this Interim Order or the DIP Documents.

2.2    Superpriority Administrative Expense. For all DIP Obligations now existing or hereafter arising pursuant to this Interim Order, the DIP Documents or otherwise, the DIP Agent, for the benefit of itself and the other DIP Lenders, is granted an allowed

superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtors, whether now in existence or hereafter incurred by the Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia sections 105, 326, 328, 330, 331, 364(c)(1), 503(b), 507(a), 507(b), 546(c), 726 or 1114 of the Bankruptcy Code (the "Superpriority Claim"), whether or not such expenses or claims may become secured by a judgment or other lien or other non-consensual lien, levy or attachment; subject only to the Carve-Out to the extent expressly set forth in this Interim Order.

> 2.2.1  Carve Out.  Upon the declaration by the DIP Agent of the occurrence of an Event of Default (the "Default Notice"), the DIP Agent's and the DIP Lenders' liens, claims and security interests in the Collateral and their Superpriority Claim shall be subject only to the right of payment of the following expenses (the "Carve Out Expenses"):

> > a)  statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6);

> > b)  fees payable to the Clerk of this Court;

> > c)  reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an amount not exceeding $75,000; and

> > d)  subject to the terms and conditions of this Interim Order, the unpaid and outstanding reasonable fees and expenses actually incurred following the date of the Default Notice, by attorneys, accountants and other professionals retained by the Debtors in an aggregate amount not exceeding $300,000 and any Committee(s) appointed under sections 327, 363 or 1103(a) of the Bankruptcy Code (collectively, with all professionals retained by the Debtors, the "Professionals") in an aggregate amount not exceeding $75,000, which have been or subsequently are approved by a final order of the Court pursuant to sections 326, 328, 330, or 331 of the Bankruptcy Code (collectively, the "Allowed Professional Fees"), less in each case, the net balance of any retainers then held by such Professionals (collectively, the "Professional Fee Carve Out"); provided that, neither the Carve Out nor any proceeds of the Collateral may be used to pay any such professional fees and expenses incurred in connection with (i) the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Agent or the DIP Lenders or challenging the legality, validity, priority, perfection, or enforceability of the DIP Obligations or the DIP Liens on the Collateral, (ii) the initiation or

prosecution of any claims, causes of action, adversary proceedings or other litigation against the Revolver Agent or the Prepetition Revolving Lenders or challenging the validity, priority, perfection or enforceability of the Prepetition AR Obligations (including obligations under the Swap Contracts and the Letters of Credit) or the liens on the ABL Collateral and the Other Prepetition Collateral securing the Prepetition AR Obligations (including obligations under the Swap Contracts and the Letters of Credit), (iii) a request to use the ABL Collateral, including the Cash Collateral without the prior written consent of MP and the DIP Agent in accordance with the terms and conditions of this Interim Order and the DIP Loan Agreement, (iv) a request for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to sections 364(c) or 364(d) of the Bankruptcy Code, other than from MP, without the prior written consent of MP and the DIP Agent, unless such financing will provide for the payment of all outstanding DIP Obligations of the non-consenting party upon the closing of such financing or accommodation, or (v) any act which has or could have the effect of materially and adversely modifying or compromising the rights and remedies of the DIP Agent or the DIP Lenders, or which is contrary, in a manner that is material and adverse to the DIP Agent or any DIP Lender, to any term or condition set forth in or acknowledged by the DIP Documents or this Interim Order and which results in the occurrence of an Event of Default under the DIP Documents or this Interim Order; provided that, notwithstanding anything to the contrary herein, no more than $15,000 of the ABL Collateral (including the Cash Collateral), loans under the DIP Loan Agreement, the Collateral, or the Carve Out Expenses may be used by the Committee to investigate the validity, enforceability or priority of the Prepetition AR Obligations or the liens on the ABL Collateral or the Other Prepetition Collateral securing the Prepetition AR Obligations, or to investigate any Claims and Defenses (defined below) or other causes of action against the Prepetition Revolving Lenders or the Revolver Agent. For the avoidance of doubt, nothing in this Interim Order shall impair the right of any party to object to the reasonableness of any of the foregoing fees or expenses to be paid by the Estates.

2.2.2    Payment of Carve Out Expenses.

a)    Prior to the occurrence of an Event of Default and delivery of the Default Notice, the Debtors shall be permitted to pay, solely in accordance with the Cash Budget, allowed reasonable fees incurred by Professionals and any such amounts paid by the Debtors shall not reduce the Professional Fee Carve Out.

b)      Following delivery of a Default Notice, the Debtors shall be permitted to pay, solely in accordance with the Cash Budget, any allowed reasonable fees incurred by Professionals that are outstanding prior to delivery of such Default Notice, and any such amounts paid by the Debtors shall not reduce the Professional Fee Carve Out.

c)      Any payment or reimbursement made directly by the DIP Agent, or by or on behalf of the Debtors on or after the occurrence of an Event of Default, in respect of any Allowed Professional Fees or any other Carve Out Expenses (exclusive of the application of any retainers by any of the Professionals) shall permanently reduce the Professional Fee Carve Out on a dollar-for-dollar basis. The DIP Agent's and DIP Lenders' obligation to fund or otherwise pay the Professional Fee Carve Out and the other Carve Out Expenses shall be added to and made a part of the DIP Obligations, secured by the Collateral, and entitle the DIP Agent and the DIP Lenders to all of the rights, claims, liens, priorities and protections under this Interim Order, the DIP Documents, the Bankruptcy Code or applicable law. Payment of any Carve Out Expenses, whether by or on behalf of the DIP Agent or any DIP Lender, shall not and shall not be deemed to reduce the DIP Obligations, and shall not and shall not be deemed to subordinate any of the DIP Agent's and the DIP Lenders' liens and security interests in the Collateral or their Superpriority Claim to any junior pre- or postpetition lien, interest or claim in favor of any other party. Except as otherwise provided herein with respect to the Professional Fee Carve Out and the other Carve Out Expenses, the DIP Agent and the DIP Lenders shall not, under any circumstance, be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with the Cases under any chapter of the Bankruptcy Code, and nothing in this Interim Order shall be construed to obligate the DIP Agent or any DIP Lender in any way, to pay compensation to or to reimburse expenses of any Professional, or to ensure that the Debtors have sufficient funds to pay such compensation or reimbursement.

2.3      Adequate Protection in Respect of Prepetition First Lien Term Loan Obligations and Prepetition Second Lien Term Loan Obligations.

2.3.1   Use of ABL Collateral (Including Cash Collateral). Subject to the terms and conditions of this Interim Order and the DIP Documents, and in accordance with the Cash Budget, the Debtors are hereby authorized to use the ABL Collateral, including the Cash Collateral; provided that (a) the Prepetition First Lien Term Lenders and the Prepetition Second

Lien Term Lenders are granted adequate protection as hereinafter set forth and (b) except on the terms of this Interim Order and the DIP Documents, the Debtors shall be enjoined and prohibited from at any time using the ABL Collateral, including the Cash Collateral.

2.3.2   Use of Other Prepetition Collateral (as defined in the Motion). Debtors are hereby authorized to use the Other Prepetition Collateral in the ordinary course of business and the Prepetition First Lien Term Lenders and the Prepetition Second Lien Term Lenders are adequately protected for the use of such Other Prepetition Collateral by the adequate protection provided herein.

2.3.3   Replacement Liens. As adequate protection for the Debtors' use of the ABL Collateral, the subordination to the DIP Obligations and the Carve Out Expenses and for the Debtors' use of the Other Prepetition Collateral, to the extent of any diminution in the interests (if any) of the Prepetition First Lien Term Agent (on behalf of the Prepetition First Lien Term Lenders) and the Prepetition Second Lien Term Agent (on behalf of the Prepetition Second Lien Term Lenders), as the case may be, in the ABL Collateral and the Other Prepetition Collateral from and after the Petition Date, the Prepetition First Lien Term Agent (on behalf of the Prepetition First Lien Term Lenders) and the Prepetition Second Lien Term Agent (on behalf of the Prepetition Second Lien Term Lenders) are hereby granted, pursuant to sections 361, 363(c)(2) and 364(d)(1) of the Bankruptcy Code, replacement liens on and security interests in the ABL Collateral and the Other Prepetition Collateral, which, for purposes of this Interim Order shall exclude the Avoidance Actions, including any proceeds thereof, in accordance with the priorities set forth in the Intercreditor Agreement (the "Replacement Liens"). Notwithstanding anything to the contrary contained herein or otherwise, the Replacement Liens on the ABL Collateral shall be junior and subordinate in all respects to (i) the prior indefeasible payment in full in cash of all DIP Obligations owing to the DIP Agent and the DIP Lenders, (ii) the DIP Liens granted to the DIP Agent and the DIP Lenders pursuant to this Interim Order, (iii) the permitted prepetition liens of third-parties, and (iv) all Carve Out Expenses (including, without limitation, the Professional Fee Carve Out); provided that, the Prepetition First Lien Term Agent, the Prepetition First Lien Term Lenders, the Prepetition Second Lien Term Agent, and the Prepetition Second Lien Term Lenders shall have no right to seek or exercise any rights or remedies in respect of the Replacement Liens (whether in these Cases or any subsequently converted case(s)) until all DIP Obligations owing to the DIP Agent and the DIP Lenders have

been indefeasibly paid and satisfied in full in accordance with the DIP Documents and this Interim Order.

2.3.4    Section 507(b) Priority Claim.    To the extent the Replacement Liens are insufficient to adequately protect against the diminution in value of the ABL Collateral, the Prepetition First Lien Term Agent (on behalf of the Prepetition First Lien Term Lenders) and the Prepetition Second Lien Term Agent (on behalf of the Prepetition Second Lien Term Lenders) shall also have, subject to the terms and conditions of this section 2.3.3, priority in payment afforded by Bankruptcy Code section 507(b) in an amount equal to the amount by which such diminution exceeds the value of the Replacement Liens (the "Priority Claims"). Notwithstanding anything to the contrary contained herein or otherwise, the Priority Claims shall be junior and subordinate in all respects to (i) the prior indefeasible payment in full in cash of all DIP Obligations owing to the DIP Agent and the DIP Lenders, (ii) the Superpriority Claim granted in favor of the DIP Agent and the DIP Lenders pursuant to this Interim Order and (iii) all Carve Out Expenses (including, without limitation, the Professional Fee Carve Out); provided that, the Prepetition First Lien Term Agent, the Prepetition First Lien Term Lenders, the Prepetition Second Lien Term Agent, and the Prepetition Second Lien Term Lenders shall have no right to seek or exercise any rights or remedies in respect of the Priority Claims (whether in these Cases or any subsequently converted case(s)) until all DIP Obligations owing to the DIP Agent and the DIP Lenders have been indefeasibly paid and satisfied in full in accordance with the DIP Documents and this Interim Order.

2.3.5    For the reasons set forth above, including that the DIP Financing and use of Cash Collateral are in accordance with and as described in Section 6.1 of the Intercreditor Agreement, this Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition First Lien Term Lenders and the Prepetition Second Lien Term Lenders.

SECTION 3.    Default Rights and Remedies. Relief from Stay.

3.1    Events of Default. The occurrence of any of the following events shall constitute an "Event of Default" under this Interim Order:

a.    Any Debtor's failure to perform, in any respect, any of the terms, conditions or covenants or their obligations under this Interim Order; or

b.    An "Event of Default" under the DIP Loan Agreement or any of the other DIP Documents.

3.2    <u>Rights and Remedies Upon Event of Default</u>. Upon the occurrence of and during the continuance of an Event of Default, (i) the Debtors shall be bound by all restrictions, prohibitions and other terms as provided in this Interim Order, the DIP Loan Agreement and the other DIP Documents and (ii) the DIP Agent shall be entitled to take any act or exercise any right or remedy (subject to section 3.6 below) as provided in this Interim Order, the DIP Loan Agreement or any DIP Document, including, without limitation, declaring all DIP Obligations immediately due and payable, accelerating the DIP Obligations, ceasing to extend advances to the Debtors, setting off any DIP Obligations with Collateral or proceeds in the DIP Agent's possession, terminating the Swap Contracts in accordance with the terms thereof (with the calculation of the Swap Termination Value to be as set forth in the DIP Loan Agreement) and enforcing any and all rights with respect to the Collateral. Notwithstanding Section 3.6 of this Interim Order and section 362 of the Bankruptcy Code, and without order of or application or motion to the Court, the DIP Agent and the DIP Lenders shall have no obligation to lend or advance any additional funds or release any collections or proceeds of ABL Collateral to or on behalf of the Debtors, or provide any other financial accommodations to the Debtors, immediately upon or after the occurrence of an Event of Default or upon the occurrence of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute an Event of Default.

3.3    <u>Limitation on Charging Expenses against Collateral</u>.    Subject to and effective upon entry of the Final Order, except to the extent of the Carve Out Expenses, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principal of law, without the prior written consent of the DIP Agent, and no such consent shall be implied from any other action or inaction by the DIP Agent and the DIP Lenders.

3.4    <u>Payments Free and Clear</u>. Subject to the provisions regarding unwinding the roll-up on the Prepetition AR Obligations into DIP Obligations on the terms set forth in Section 1.2 of this Interim Order, any and all payments or proceeds remitted to the DIP Agent on

behalf of the DIP Lenders pursuant to the provisions of this Interim Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability.

     3.5    Expiration of Commitment. Upon expiration of Borrower's authority to borrow and obtain other credit accommodations from the DIP Agent and the DIP Lenders pursuant to the terms of this Interim Order and the DIP Documents (except if such authority shall be extended by the DIP Agent and the DIP Lenders in accordance with the DIP Documents, which consent shall not be implied or construed from any action, inaction or acquiescence by MP, the DIP Agent or the DIP Lenders), unless an Event of Default set forth in section 3.1 above occurs sooner and the automatic stay under section 362 of the Bankruptcy Code has been lifted or modified pursuant to section 3.6 of this Interim Order, all of the DIP Obligations shall immediately become due and payable and the DIP Agent and the DIP Lenders shall be automatically and completely relieved from the effect of any stay under section 362 of the Bankruptcy Code, any other restriction on the enforcement of their liens upon and security interests in the Collateral or any other rights granted to the DIP Agent and the DIP Lenders pursuant to the terms and conditions of the DIP Documents or this Interim Order, and the DIP Agent, acting on behalf of itself and the other DIP Lenders, and MP shall be and are hereby authorized, in their sole discretion, to take any and all actions and remedies provided to them and in the case of the Agent, provided to the DIP Lenders, in this Interim Order, the DIP Documents or applicable law which they may deem appropriate to proceed against and realize upon the Collateral or any other property of the Estates, subject to section 3.6 of this Interim Order.

     3.6    Relief from Automatic Stay. The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application or order of the Court to the extent necessary to permit the DIP Agent and the DIP Lenders to perform any act authorized or permitted under or by virtue of this Interim Order or the DIP Documents, including, without limitation, (a) to implement the DIP Financing authorized by this Interim Order pursuant to the terms of the DIP Documents, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Collateral and (c) to assess, charge, collect, advance, deduct and receive Collateral proceeds and payments with respect to the DIP Obligations, including, without limitation, all interests, fees, costs and expenses permitted under

the DIP Documents, and apply such payments to the DIP Obligations pursuant to the DIP Documents and this Interim Order. In addition, and without limiting the foregoing, upon the occurrence of an Event of Default and after providing five (5) business days prior written notice (the "Enforcement Notice") to counsel for the Debtors, counsel for the Revolver Agent, counsel for the Prepetition First Lien Term Agent, counsel for the Prepetition Second Lien Term Agent, counsel for the Committee (if appointed), and the U.S. Trustee (unless the Court for cause orders that the time period may be shortened to avoid irreparable harm to the Collateral), the DIP Agent, acting on behalf of itself and all of the other DIP Lenders, and MP shall be entitled to take any action and exercise all rights and remedies provided to it by this Interim Order, the DIP Documents or applicable law as they may deem appropriate in their sole discretion, including, in the case of the DIP Agent, among other things, to proceed against and realize upon the Collateral or any other assets or properties of the Estates upon which the DIP Agent, for the benefit of itself and all of the other DIP Lenders, has been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all DIP Obligations. In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing.

SECTION 4.    Representations; Covenants; and Waivers.

4.1    {Intentionally Omitted}.

4.2    Collateral Rights. Until all of the DIP Obligations shall have been indefeasibly paid and satisfied in full:

4.2.1    No other party shall foreclose or otherwise seek to enforce any junior lien or claim in any Collateral, other than by motion for adequate protection or relief from stay before this Court, and

4.2.2    Upon and after the occurrence of an Event of Default, in connection with a liquidation of any of the Collateral, the DIP Agent (or any of its employees, agents, consultants, contractors or other professionals) shall have the right, at the sole cost and expense of the Debtors, to: (i) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by the Debtors and (ii) use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of the Debtors, which are owned by or subject to a lien of any third party and which are used by the Debtors in their businesses. The DIP Agent and the DIP Lenders will be responsible

for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property for the period of time that the DIP Agent actually uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that DIP Agent actually occupies or uses such assets or properties).

      4.3    Release.

      4.3.1    Upon the entry of the Final Order, subject to section 5.3 below, in consideration of the DIP Agent and the DIP Lenders making postpetition loans, advances and providing other credit and financial accommodations to the Debtors, each Debtor, on behalf of itself and its successors and assigns, (collectively, the "Releasors"), shall, forever release, discharge and acquit MP, the DIP Agent, the other DIP Lenders, the Revolver Agent, and the Revolver Lenders and their respective participants, officers, directors, agents, attorneys, predecessors-in-interest, successors and assigns (collectively, the "Releasees"), solely in their capacity as DIP Agent, DIP Lender, Revolver Agent, and/or Revolver Lenders, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that Releasors had, have or hereafter can or may have against Releasees as of the date hereof, in respect of events that occurred on or prior to the date hereof with respect to the Debtors, the DIP Obligations, the DIP Documents, the Prepetition AR Obligations, the Prepetition Revolver Documents, and any advances or other financial accommodations made by MP, the DIP Agent and the other DIP Lenders to Debtors pursuant to the DIP Documents or by the Revolver Agent and the Prepetition Revolving Lenders pursuant to the Prepetition Revolver Documents.

      4.3.2    Upon (a) receipt by the DIP Agent, on behalf of itself and the DIP Lenders, of indefeasible payment in full of all DIP Obligations in cash or other immediately available funds, acceptable to the DIP Agent to secure any DIP Obligations that survive or continue beyond the termination of the DIP Documents, and (b) the termination of any obligations to provide advances and supplemental line advances, in consideration of the agreements of the DIP Agent and the DIP Lenders contained herein and the making of any advances by the DIP Lenders, each Debtor hereby covenants and agrees at the time of the entry of an order approving an asset sale or otherwise to execute and deliver in favor of the DIP Agent

and DIP Lenders, a valid and binding termination and release agreement (providing for a release of MP, the DIP Agent, the other DIP Lenders, and other applicable Releasees from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the DIP Documents or any applicable financing orders, including, without limitation, any obligation or responsibility, whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated to pay or otherwise fund the Carve Out Expenses), in form and substance acceptable to the DIP Agent, the terms of which shall be approved in a sale order or other order of the Court; provided that, an acceptable mechanism satisfactory to the DIP Agent shall be established to fund the Carve Out Expenses and any post-sale closing expenses. If the Borrower or any Guarantor violates such covenant, the Debtors agree to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

SECTION 5.    Other Rights and Obligations.

     5.1    Preservation of Rights Granted Under the Order.

     5.1.1    No claim or lien having a priority senior to or *pari passu* with those granted by this Interim Order to the DIP Agent and the DIP Lenders shall be granted while any portion of the DIP Obligations (or any refinancing thereof) remain outstanding, and the DIP Liens and the Replacement Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Estates under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interests, whether under section 364(d) of the Bankruptcy Code or otherwise.

     5.1.2    Unless all DIP Obligations shall have been indefeasibly paid in full in cash, the Debtors shall not seek, and it shall constitute an Event of Default under the DIP Loan Agreement and a termination of the right to use Cash Collateral if any of the Debtors seek, or if there is entered, without the prior written consent of MP and the DIP Agent, and no such consent shall be implied by any other action, inaction or acquiescence by MP, the DIP Agent or any other DIP Lender, (i) any modification of this Interim Order or (ii) an order converting or dismissing any of the Cases. If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code and subject to the Carve Out) that (A) the Superpriority

Claims and the other administrative claims granted pursuant to this Interim Order, the DIP Liens, the Replacement Liens and Priority Claims shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and all obligations in respect of Replacement Liens shall have been paid and satisfied in full (and that such Superpriority Claims, Priority Claims and the other administrative claims granted pursuant to this Interim Order, the DIP Liens and the Replacement Liens shall, notwithstanding such dismissal remain binding on all parties in interest) and (B) this Court shall retain jurisdiction notwithstanding such dismissal for the purposes of enforcing the claims, liens and security interests referred to in clause (A) above.

5.1.3    Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, the Superpriority Claims and the other rights and remedies of the DIP Agent and the DIP Lenders granted by this Interim Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code. Until all DIP Obligations are indefeasibly paid in full in cash, the terms and provisions of this Interim Order and the DIP Documents shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Replacement Liens, the Superpriority Claims, the other administrative claims granted pursuant to this Interim Order, and all other rights and remedies of the DIP Agent and the DIP Lenders granted by this Interim Order and the DIP Documents shall continue in full force and effect.

5.2    No Modification or Stay of this Interim Order. Notwithstanding (i) any stay, modification, amendment, supplement, vacation, revocation or reversal of this Interim Order, the DIP Documents or any term hereunder or thereunder, (ii) the failure to obtain a Final Order pursuant to Bankruptcy Rule 4001(c)(2) or (iii) the dismissal or conversion of one or more of the Cases (each, a "Subject Event"), (x) the acts taken by the DIP Agent and DIP Lenders in accordance with this Interim Order, and (y) the DIP Obligations incurred or arising prior to the DIP Agent's actual receipt of written notice from the Debtors expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the

original provisions of this Interim Order, and the acts taken by the DIP Agent and DIP Lenders in accordance with this Interim Order, and the liens granted to the DIP Agent and all of the DIP Lenders in the Collateral, and all other rights, remedies, privileges, and benefits in favor of the DIP Agent and all of the DIP Lenders pursuant to this Interim Order and the DIP Documents shall remain valid and in full force and effect pursuant to section 364(e) of the Bankruptcy Code. For purposes of this Interim Order, the term "appeal", as used in section 364(e) of the Bankruptcy Code, shall be construed to mean any proceeding for reconsideration, amending, rehearing, or re-evaluating this Interim Order by this Court or any other tribunal.

5.3     Effect of Stipulation on Third Parties. The stipulation and admissions with respect to the Debtors' prepetition obligations contained in this Interim Order, including without limitation, in Paragraph D of this Interim Order, shall be binding upon the Debtors in all circumstances. In addition, such stipulations and admissions shall be binding upon all other parties in interest with requisite standing, including without limitation, the Committee, unless (a) any such Committee timely files an adversary proceeding or contested matter that seeks to object to, challenge, contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, disgorgement or claims of any kind (subject to the limitations contained herein, including without limitation in this section 5.3) by no later than 60 days after the appointment of the Committee by the U.S. Trustee, (b) in the event no Committee is appointed within 30 days following the Petition Date, any party in interest with requisite standing timely files an adversary proceeding or contested matter (subject to the limitations contained herein, including without limitation in this section 5.3) by no later than 75 days after entry of the Interim Order or (c) any such later date agreed to in writing with the Revolver Agent or by an order of this Court for cause shown. If no such adversary proceeding or contested matter is timely filed in respect of the Prepetition AR Obligations, (x) such obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 case, (y) the liens on the ABL Collateral securing such obligations shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of first priority on the ABL Collateral as specified in the Intercreditor Agreement, not subject to defense, counterclaim, recharacterization, subordination or avoidance and (z) the Prepetition AR Obligations, the Revolver Agent and the Prepetition Revolving Lenders, as applicable, and the liens on the ABL Collateral granted to secure such

obligations shall not be subject to any other or further challenge by the Committee or any other party-in-interest, and such Committee or party-in-interest shall be enjoined from seeking to exercise the rights of the Estates, including without limitation any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors) in respect thereof. Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee, standing or authority to pursue any cause of action belonging to the Debtors or their Estates, including with respect to the Prepetition AR Obligations or any liens granted by the Debtors to secure the foregoing.

5.4     Power to Waive Rights; Duties to Third Parties. The DIP Agent and the DIP Lenders shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Interim Order in respect of the DIP Agent and DIP Lenders (the "Lender Rights"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Lender Right(s). Any waiver by the DIP Agent or any DIP Lender of any Lender Rights shall not be or constitute a continuing waiver. Any delay in or failure to exercise or enforce any Lender Right shall neither constitute a waiver of such Lender Right, subject the DIP Agent or any DIP Lender to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to the DIP Agent or any DIP Lender.

5.5     Disposition of Collateral. Other than as set forth in the DIP Documents, the Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral without the prior written consent of MP (and no such consent shall be implied, from any other action, inaction or acquiescence by MP, the DIP Agent or any other DIP Lender) and an order of this Court. Debtors shall remit to DIP Agent, or cause to be remitted to DIP Agent, all proceeds of the Collateral for application by the DIP Agent to the DIP Obligations pursuant to the DIP Documents.

5.6     Inventory. The Debtors shall not, without the consent of the DIP Agent, (a) enter into any agreement to return any inventory to any of their creditors for application against any prepetition indebtedness under any applicable provision of section 546 of the Bankruptcy Code or (b) consent to any creditor taking any setoff against any of its prepetition indebtedness based upon any such return pursuant to section 553(b)(1) of the Bankruptcy Code or otherwise.

5.7     Reservation of Rights. The terms, conditions and provisions of this Interim Order are in addition to and without prejudice to the rights of the DIP Agent and each DIP Lender to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Documents or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estates.

5.8     Binding Effect.

5.8.1    The provisions of this Interim Order, the DIP Documents, the DIP Obligations, Superpriority Claims, Replacement Liens, and Priority Claims, and any and all rights, remedies, privileges and benefits in favor of the DIP Agent and each DIP Lender provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Interim Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including without limitation any order which may be entered confirming any plan of reorganization, converting one or more of the Cases to any other chapter under the Bankruptcy Code, or dismissing one or more of the Cases.

5.8.2    In the event this Court modifies any of the provisions of this Interim Order or the DIP Documents following a Final Hearing, (a) such modifications shall not affect the rights or priorities of the DIP Agent and the DIP Lenders pursuant to this Interim Order with respect to the Collateral or any portion of the DIP Obligations which arises or is incurred or is advanced prior to such modifications, and (b) this Interim Order shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

5.8.3    This Interim Order shall be binding upon the Debtors, all parties in interest in the Cases and their respective successors and assigns, including any trustee or other fiduciary appointed in the Cases or any subsequently converted bankruptcy case(s) of any Debtor. This Interim Order shall also inure to the benefit of the DIP Agent, the Revolver Agent, the Prepetition First Lien Term Agent, the Prepetition Second Lien Term Agent, all of the DIP Lenders, the Debtors and their respective successors and assigns.

5.9    Restrictions on Cash Collateral Use, Additional Financing, Plan Treatment. All postpetition advances and other financial accommodations under the DIP Loan Agreement are made in reliance on this Interim Order and there shall not at any time (other than after indefeasible payment of the DIP Obligations in full in cash) be entered in the Case, or in any subsequently converted case under Chapter 7 of the Bankruptcy Code, any order (other than the Final Order) which (a) authorizes use of the ABL Collateral or the Cash Collateral, or the sale, lease or other disposition of any Collateral, except as expressly permitted hereunder or under the DIP Documents, (b) authorizes under section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which the DIP Agent or the DIP Lenders hold a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to the DIP Agent and the DIP Lenders herein; unless, in each instance (i) MP and the DIP Agent shall have given their express prior written consent with respect thereto, no such consent being implied from any other action, inaction or acquiescence by MP, the DIP Agent or any other DIP Lender or (ii) such other order requires that all DIP Obligations shall first be indefeasibly paid and satisfied in accordance with the terms of the DIP Loan Agreement, including, without limitation, all debts and obligations of the Debtors to the DIP Agent and the DIP Lenders which arise or result from the obligations, loans, security interests and lien authorized herein, on terms and conditions acceptable to the DIP Agent. The security interests and lien granted to or for the benefit of the DIP Agent and the DIP Lenders hereunder and the rights of the DIP Agent and the DIP Lenders pursuant to this Interim Order and the DIP Documents with respect to the DIP Obligations and the Collateral are cumulative and shall not be altered, modified, extended, impaired, or affected by any plan of reorganization or liquidation of the Debtors and, if Agent shall expressly consent in writing that the DIP Obligations shall not be repaid in full upon confirmation thereof, shall continue after confirmation and consummation of any such plan.

5.10    Marshalling. In no event shall the DIP Agent or any DIP Lender be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral.

5.11    Term: Termination. Notwithstanding any provision of this Interim Order to the contrary, the term of the DIP Financing among the Debtors, the DIP Agent and the DIP

Lenders authorized by this Interim Order may be terminated pursuant to the terms of the DIP Documents.

      5.12   Limited Effect. Unless the Interim Order specifically provides otherwise, in the event of a conflict between the terms and provisions of any of the DIP Documents and this Interim Order, the terms and provisions of this Interim Order shall govern, interpreted as most consistent with the terms and provisions of the DIP Documents.

      5.13   Objections Overruled. All objections to the entry of this Interim Order are, to the extent not withdrawn, hereby overruled.

SECTION 6.  Final Hearing and Response Dates.  The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for March 16, 2009, at 1:00 p.m. before this Court. *The Debtors shall promptly mail copies of this Interim Order to the Noticed Parties, and to any other party that has filed a request for notices with this Court and to any Committee after same has been appointed, or Committee counsel, if same shall have filed a request for notice. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) counsel for the Debtors, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York, 10036, Attn: Philip M. Abelson, Esq. and Cozen O'Connor, 1201 North Market Street, Suite 1400, Wilmington, DE 19801, Attn: Mark Felger, Esq.; (b) counsel for the DIP Agent, Kaye Scholer LLP, 425 Park Avenue, New York, New York 10022, Attn: Benjamin Mintz, Esq.; (c) counsel for MP, Bracewell & Giuliani LLP, 1177 Avenue of the Americas, New York, New York, 10036, Attn: Jennifer Feldsher, Esq.; (d) counsel to any Committee; and (e) the U.S. Trustee; and shall be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, in each case, to allow actual receipt of the foregoing no later than March 9, 2009, at 4:00 pm prevailing Eastern time.*

Dated: February 20, 2009
       Wilmington, Delaware

 

_____
UNITED STATES BANKRUPTCY JUDGE