**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| FOAMEX INTERNATIONAL INC., *et al.*,[1] | ) | **Case No. 09-10560 (KJC)** |
| | ) | |
| **Debtors.** | ) | **(Jointly Administered)** |

**ORDER (A) AUTHORIZING AND APPROVING THE SALE OF PURCHASED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (B) AUTHORIZING AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF**

This matter is before the Court on the motion[2], dated March 25, 2009, of Foamex International, Inc. ("Foamex Inc."), Foamex L.P. ("Foamex"), Foamex Latin America, Inc. ("Foamex Latin America"), Foamex Asia, Inc. ("Foamex Asia"), FMXI, LLC ("FMXI"), Foamex Carpet Cushion LLC ("Foamex Carpet"), Foamex Canada Inc. ("Foamex Canada"), and Foamex Mexico, Inc. ("Foamex Mexico"), the above-captioned debtors and debtors in possession (each, a "Debtor," and collectively, the "Debtors"), for entry of an order, pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (a) approving the Asset Purchase Agreement, as such agreement may have been amended (the "Final APA"), attached hereto as Exhibit A, by and between the Debtors and MP Foam DIP LLC (the "Purchaser"), which incorporates the Credit Bid (as defined below)

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Foamex International, Inc. (3908); Foamex, L.P. (5617); Foamex Latin America, Inc. (4053); Foamex Asia, Inc. (9431); FMXI, LLC (9496); Foamex Carpet Cushion LLC (2280); Foamex Mexico, Inc. (8685); and Foamex Canada Inc. (5846). The Debtors' (other than Foamex Canada Inc.) principal office is located at Rose Tree Corporate Center II, 1400 N. Providence Road, Suite 2000, Media, PA 19063-2067. Foamex Canada Inc.'s address is 8355 Jeanne Mance Street, Montreal, Quebec, Canada, H2P 2Y1.

[2] Unless otherwise stated, all capitalized terms not defined herein shall have the same meaning as set forth in the Final APA and the Sale Motion, and to the extent of any inconsistency, the Final APA shall govern.

submitted by the Agent (as defined below) at the direction of the Required Lenders (as defined below) to acquire the Purchased Assets, (b) granting the Debtors authority to sell substantially all of their operating assets as further set forth in the Final APA free and clear of liens, liabilities, claims, interests and encumbrances, (c) authorizing the Debtors to assume and assign the Purchased Contracts to the Purchaser, and (d) granting certain related relief (the "Sale Motion"), and this Court, in furtherance of the Sale Motion, having entered an order on April 9, 2009 (the "Bid Procedures Order") approving, among other things, the proposed Bidding Procedures appended to the Bid Procedures Order, the Reimbursable Expenses for the Potential Purchaser, notice of the Sale, and procedures for determining and fixing cure costs to be paid in respect of Purchased Contracts; and the Debtors having determined, after an extensive marketing process, that the Credit Bid is the highest and best bid for the Purchased Assets; and adequate and sufficient notice of the Bidding Procedures, the Final APA, and all transactions contemplated thereunder and in this Order having been given in the manner directed by the Court in the Bidding Procedures Order; and all interested parties having been afforded an opportunity to be heard with respect to the Sale Motion and all relief related thereto; and the Court having reviewed and considered (i) the Sale Motion and all relief related thereto, (ii) the objections thereto and (iii) the Court having heard statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Sale Motion at hearings before the Court on May 21, 2009 and May 26, 2009 (together, the "Sale Hearing"); and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon; and good and sufficient cause appearing therefor,

THE COURT HEREBY FINDS AND DETERMINES THAT:[3]

**Jurisdiction, Final Order and Statutory Predicates**

A. This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(l) and 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B. The statutory predicates for the relief requested in the Sale Motion are sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007 and 9014.

C. This order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, waives any stay and expressly directs entry of judgment as set forth herein.

**Notice of the Sale and Auction**

D. Actual written notice of the Sale Motion was provided to the following parties (the "Notice Parties"): (i) counsel to the agent and lenders under the Debtors' postpetition DIP credit agreement, (ii) counsel to the agents under the Debtors' prepetition secured credit facilities, (iii) counsel for the statutory committee of unsecured creditors appointed in these cases

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

(the "Creditors' Committee"), (iv) the United States Trustee for the District of Delaware (the "U.S. Trustee"), (v) the Internal Revenue Service, (vi) the Securities and Exchange Commission; (vii) all other applicable state and federal taxing authorities having jurisdiction over the Purchased Assets; (viii) the United States Department of Justice, (ix) all applicable state attorneys general and local regulatory authorities; (x) the United States Environmental Protection Agency and any other applicable federal or state environmental agency; (xi) the counterparties to each of the Purchased Contracts; (xii) all other parties known to the Debtors who have or may have asserted Liens or Claims against any of the Purchased Assets; (xiii) all parties that have requested notice pursuant to Bankruptcy Rule 2002; and (xiv) all other entities known to have expressed an interest in a transaction with respect to all or part of the Purchased Assets.

E. The Debtors published notice of the Sale Motion, the Sale, the time and place of the proposed Auction, the time and place of the Sale Hearing and the time for filing an objection to the Sale Motion in the *Wall Street Journal, national edition* on April 16, 2009.

F. The Debtors' Notice of Auction and Sale Hearing (as defined in the Sale Motion) was reasonably calculated to provide all interested parties with timely and proper notice of the Sale, Sale Hearing and Auction.

G. As evidenced by the affidavits of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion, Auction, Sale Hearing, the Sale and the transactions contemplated thereby, including without limitation, the assumption and assignment of the Purchased Contracts to the Purchaser, has been provided in accordance with the Bid Procedures Order and sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007 and 9008. The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Motion, Auction,

Sale Hearing, the Sale or the assumption and assignment of the Purchased Contracts to the Purchaser is or shall be required.

H. The disclosures made by the Debtors concerning the Sale Motion, the MP Asset Purchase Agreement, Auction, Final APA, the Sale, the assumption and assignment of the Purchased Contracts to the Purchaser and Sale Hearing were good, complete and adequate.

I. A reasonable opportunity to object and be heard with respect to the Sale and the Sale Motion and the relief requested therein (including the assumption and assignment of Purchased Contracts to the Purchaser and any Cure Costs related thereto), has been afforded to all interested persons and entities, including the Notice Parties.

**Good Faith of Purchaser**

J. The Final APA was negotiated, proposed and entered into by the Sellers and the Purchaser without collusion, in good faith and from arms'-length bargaining positions. The Purchaser is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

K. Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Final APA to be avoided under Bankruptcy Code section 363(n). Specifically, the Purchaser has not acted in a collusive manner with any person and the Purchase Price was not controlled by any agreement among the bidders.

L. The Purchaser is purchasing the Purchased Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to all of the protections afforded by that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (a) except as set forth in the Bid Procedures Order, the Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (b) the Purchaser complied with the

provisions in the Bid Procedures Order; (c) the Purchaser agreed to subject its bid to the competitive bidding procedures set forth in the Bid Procedures Order; (d) the Purchaser in no way induced or caused the chapter 11 filings by the Debtors; (e) all payments to be made by the Purchaser in connection with the Sale have been disclosed; and (f) no common identity of directors or controlling stockholders exists between the Purchaser and any of the Debtors.

**Highest and Best Offer**

M. The Debtors conducted an auction process in accordance with, and have otherwise complied in all respects with, the Bid Procedures Order. The auction process set forth in the Bid Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Purchased Assets. The Auction was duly noticed and conducted in a noncollusive, fair, and good faith manner and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Purchased Assets.

N. The Debtors are indebted to certain lenders (the "First Lien Lenders") under the Debtors' prepetition senior secured first lien term loan facility dated as of February 12, 2007 (as amended, the "First Lien Term Loan Agreement" and, the documents related thereto, the "First Lien Term Loan Documents"). As of the Petition Date, the Debtors' obligations to the First Lien Lenders under the First Lien Term Loan Agreement were approximately $324.8 million in principal, plus accrued and unpaid interest thereon and fees and expenses.

O. MatlinPatterson Global Opportunities Partners III L.P. and MatlinPatterson Global Opportunities Partners (Cayman) III L.P., Bennett Management Corporation, on behalf of its affiliated funds, Black Diamond CLO 2005-1, LTD., Black Diamond CLO 2005-2, LTD., Black Diamond CLO 2006-1 (Cayman), LTD., Black Diamond International Funding, LTD., and BDCM Opportunity Fund II, L.P., together hold in excess of 50

percent of the debt outstanding under the First Lien Term Loan Agreement. Lenders under the First Lien Term Loan Agreement who hold in excess of fifty percent of debt outstanding thereunder are "Required Lenders" as that term is defined in the First Lien Term Loan Agreement.

P. At the portion of the Sale Hearing that occurred on May 21, 2009, this Court authorized the Bank of New York, Mellon, as collateral and administrative agent (the "Agent") to credit bid on behalf of the First Lien Term Lenders pursuant to section 363(k) of the Bankruptcy Code. At the Auction, the Required Lenders directed the Agent to make a credit bid of $155,000,000 on behalf of the First Lien Term Lenders, and offered as an accommodation a cash out option for non-credit bidding lenders under the First Lien Term Loan Agreement at an implied value of $146.5 million, and with cash sufficient to fund the cash obligations under the Final APA (the "Credit Bid"). The Credit Bid also includes the Global Settlement (as defined in the Final APA) among Agent, the Purchaser, Law Debenture Trust Company of New York, as administrative agent under the Second Lien Credit Agreement, and the Official Committee of Unsecured Creditors. The Agent, pursuant to the direction from Required Lenders, submitted the Credit Bid. The Credit Bid was accepted by the Debtors at the Auction, complied with the provisions of section 363(k) of the Bankruptcy Code, and was a valid exercise of the Agent's rights, responsibilities and obligations under the First Lien Term Credit Agreement. The Credit Bid shall be consummated as set forth in the Final APA and as authorized in this Sale Order.

Q. The Final APA constitutes the highest and best offer for the Purchased Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Final APA constitutes the

highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

**No Fraudulent Transfer**

R. The consideration provided by the Purchaser pursuant to the Final APA (i) is fair and reasonable, (ii) is the highest or best offer for the Purchased Assets and (iii) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia. No other person or entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Debtors' estates than the Purchaser. Approval of the Sale Motion and the Final APA and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their estates, creditors and other parties in interest.

S. The Purchaser is not a mere continuation of the Debtors or their estates and there is no continuity of enterprise between the Purchaser and the Debtors. The Purchaser is not holding itself out to the public as a continuation of the Debtors. The Purchaser is not a successor to the Debtors or their estates and the Sale does not amount to a consolidation, merger or de facto merger of Purchaser and the Debtors.

**Validity of Transfer**

T. Each Debtor (i) has full corporate power and authority to execute and deliver the Final APA and all other documents contemplated thereby, (ii) has all corporate authority necessary to consummate the transactions contemplated by the Final APA, and (iii) has taken all corporate action necessary to authorize and approve the Final APA and the consummation of the transactions contemplated thereby. The Debtors' sale of the Purchased

Assets has been duly and validly authorized by all necessary corporate action. No consents or approvals, other than those expressly provided for in the Final APA, are required for the Debtors to consummate the Sale and the Final APA and the transactions contemplated thereby.

U. The Final APA was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia. Neither the Debtors nor the Purchaser is entering into the transactions contemplated by the Final APA fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

V. The Debtors are the sole and lawful owners of the Purchased Assets. Subject to section 363(f) of the Bankruptcy Code, the transfer of each of the Purchased Assets to the Purchaser will be, as of the Closing Date, a legal, valid, and effective transfer of the Purchased Assets, which transfer vests or will vest the Purchaser with all right, title, and interest of the Debtors to the Purchased Assets free and clear of (a) all liens and encumbrances relating to, accruing or arising any time prior to the Closing Date (collectively, "Liens") and (b) all debts arising under, relating to, or in connection with any act of the Debtors or claims (as that term is defined in Section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options in favor of third parties, rights, contractual commitments, restrictions, interests and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these cases, and whether imposed by agreement, understanding, law, equity or otherwise (including, without limitation, rights with respect to Claims and Liens (i) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Debtors' or the Purchaser's interests in the Purchased Assets, or any

similar rights, or (ii) in respect of taxes, restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income or other exercise of any attributes of ownership) (collectively, as defined in this clause (b), "Claims"), relating to, accruing or arising any time prior to the Closing Date, with the exception of Permitted Liens and Assumed Liabilities.

**Section 363(f) is Satisfied**

W. The conditions of Section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtors may sell the Purchased Assets free and clear of any interest in the property.

X. The Purchaser would not have entered into the Final APA and would not consummate the transactions contemplated thereby if the sale of the Purchased Assets to the Purchaser and the assumption of any Assumed Liabilities by the Purchaser were not free and clear of all Liens and Claims, other than Permitted Liens and Assumed Liabilities. Unless otherwise expressly included in Permitted Liens or Assumed Liabilities, the Purchaser shall not be responsible for any Liens or Claims, including in respect of the following: (1) any labor or employment agreements; (2) all mortgages, deeds of trust and security interests; (3) intercompany loans and receivables between the Debtors and any Purchased Subsidiary or Purchased JV, (4) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any Debtor; (5) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker

Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (l) any other state or federal benefits or claims relating to any employment with any of the Debtors or any of their respective predecessors; (6) Claims or Liens arising under any Environmental Law (as defined in the Final APA) with respect to the Business, Excluded Liabilities, Purchased Assets, Excluded Assets, or assets owned or operated by Debtors or any corporate predecessor at any time prior to the Closing Date; (7) any bulk sales or similar law; (8) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (9) any theories of successor liability.

Y. The Debtors may sell the Purchased Assets free and clear of all Liens and Claims against the Debtors, their estates or any of the Purchased Assets (except the Assumed Liabilities and Permitted Liens) because, in each case, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied. Those holders of Liens or Claims against the Debtors, their estates or any of the Purchased Assets who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. All other holders of Liens or Claims (except to the extent that such Liens or Claims are Assumed Liabilities or Permitted Liens) are adequately protected by having their Liens or Claims, if any, in each instance against the Debtors, their estates or any of the Purchased Assets, attach to the net cash proceeds of the Sale ultimately attributable to the Purchased Assets in which such creditor alleges a Lien or Claims, in the same order of priority, with the same validity, force and effect that such Liens or Claims had

prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

**Cure/Adequate Protection**

Z. The assumption and assignment of the Purchased Contracts pursuant to the terms of this Order is integral to the Final APA and is in the best interests of the Debtors and their estates, creditors and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors. The Purchaser shall: (i) to the extent necessary, cure or provide adequate assurance of cure, of any default existing prior to the date hereof with respect to the Purchased Contracts, within the meaning of 11 U.S.C. §§ 365(b)(1)(A) and 365(f)(2)(A), and (ii) to the extent necessary, provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Purchased Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(B) and 365(f)(2)(A). The Purchaser's promise to pay the Cure Amounts (as defined below) and to perform the obligations under the Purchased Contracts after the Closing Date shall constitute adequate assurance of future performance within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and 365(f)(2)(B).

AA. Any objections to the assumption and assignment of any of the Purchased Contracts to the Purchaser are hereby overruled. Any objections to the Cure Amounts are resolved as set forth herein. To the extent that any counterparty failed to timely object to its Cure Amount, such counterparty is deemed to have consented to such Cure Amount and the assignments of its respective Purchased Contracts to the Purchaser.

**Compelling Circumstances for an Immediate Sale**

BB. Good and sufficient reasons for approval of the Final APA and the Sale have been articulated. The relief requested in the Sale Motion is in the best interests of the

Debtors, their estates, their creditors and other parties in interest. The Debtors have demonstrated both (i) good, sufficient and sound business purposes and justifications and (ii) compelling circumstances for the Sale other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code before, and outside of, a plan of reorganization, in that, among other things, the immediate consummation of the Sale to the Purchaser is necessary and appropriate to maximize the value of the Debtors' estates and the Sale will provide the means for the Debtors to maximize distributions to creditors.

CC. To maximize the value of the Purchased Assets and preserve the viability of the business to which the Purchased Assets relate, it is essential that the Sale of the Purchased Assets occur within the time constraints set forth in the Final APA. Time is of the essence in consummating the Sale.

DD. Given all of the circumstances of these chapter 11 cases and the adequacy and fair value of the Purchase Price under the Final APA, the proposed Sale of the Purchased Assets to Purchaser constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

EE. The consummation of the Sale and the assumption and assignment of the Purchased Contracts is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), and 365, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

## General Provisions

1. The relief requested in the Sale Motion is granted and approved as set forth in this Order and on the record of the Sale Hearing, which is incorporated herein as if set forth fully in this Order, and the Sale contemplated thereby is approved.

2. All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby denied and overruled with prejudice.

## Approval of the Final APA

3. The Final APA and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved.

4. Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (i) consummate the Sale of the Purchased Assets to the Purchaser pursuant to and in accordance with the terms and conditions of the Final APA, (ii) close the Sale as contemplated in the Final APA and this Order, and (iii) execute and deliver, perform under, consummate, implement, and close fully the Final APA, including the assumption and assignment to the Purchaser of the Purchased Contracts, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Final APA and the Sale. The Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Final APA or any other Sale related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified

solely to the extent necessary to implement the preceding sentence and the other provisions of this Order.

5. This Order shall be binding in all respects upon the Debtors, their estates, all creditors of, and holders of equity interests in, any Debtor, any holders of Liens, Claims or other interests in, against or on all or any portion of the Purchased Assets (whether known or unknown), the Purchaser and all successors and assigns of the Purchaser, the Purchased Assets and any trustees, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Debtors' cases. This Order and the Final APA shall inure to the benefit of the Debtors, their estates and creditors, the Purchaser and the respective successors and assigns of each of the foregoing.

**Transfer of the Purchased Assets**

6. Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Purchased Assets to the Purchaser on the Closing Date and such transfer shall constitute a legal, valid, binding, and effective transfer of such Purchased Assets and shall vest Purchaser with title to the Purchased Assets and, upon the Debtors' receipt of the Purchase Price, other than Permitted Liens and Assumed Liabilities, shall be free and clear of all Liens, Claims and other interests of any kind or nature whatsoever, including but not limited to, successor or successor-in-interest liability and Claims in respect of the Excluded Liabilities, with all such Liens, Claims or other interests to attach to the net cash proceeds ultimately attributable to the property against or in which such Liens, Claims or interests are asserted, subject to the terms thereof, with the same validity, force and effect, and in the same order of priority, which such Liens, Claims or interests now have against the Purchased Assets, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess

with respect thereto. Upon the Closing, the Purchaser shall take title to and possession of the Purchased Assets subject only to the Permitted Liens and Assumed Liabilities.

7. All persons and entities that are in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to the Purchaser or its assignee at the Closing. On the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Liens, Claims or other interests in the Purchased Assets, if any, as such Liens, Claims or interests may have been recorded or may otherwise exist.

8. The Debtors are hereby authorized to take any and all actions necessary to consummate the Final APA, including any actions that otherwise would require further approval by shareholders or its board of directors without the need of obtaining such approvals.

9. On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Sellers' interests in the Purchased Assets. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Final APA.

10. A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any liens and other encumbrances of record except those assumed as Assumed Liabilities or Permitted Liens.

11. If any person or entity which has filed statements or other documents or agreements evidencing Liens on, or interests in, all or any portion of the Purchased Assets (other than statements or documents with respect to Permitted Liens) shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties,

termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all liens or interests which the person or entity has or may assert with respect to all or any portion of the Purchased Assets, the Debtors are hereby authorized and directed, and the Purchaser is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets.

12. This Order is and shall be effective as a determination that, on the Closing Date, all Liens, Claims or other interest of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing Date, other than Permitted Liens and Assumed Liabilities, shall have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected. This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Final APA.

**Assumption and Assignment of Contracts.**

13. The Debtors are hereby authorized and directed in accordance with sections 105(a) and 365 of the Bankruptcy Code to (a) assume and assign to Purchaser, effective

upon the Closing of the Sale, the Purchased Contracts free and clear of all Liens, Claims and other interests of any kind or nature whatsoever (other than the Permitted Liens and Assumed Liabilities), and (b) execute and deliver to Purchaser such documents or other instruments as Purchaser deems may be necessary to assign and transfer the Purchased Contracts, Permitted Liens and Assumed Liabilities to Purchaser.

14. With respect to the Purchased Contracts: (a) each Purchased Contract is an executory contract under section 365 of the Bankruptcy Code; (b) the Debtors may assume each of the Purchased Contracts in accordance with section 365 of the Bankruptcy Code; (c) the Debtors may assign each Purchased Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Purchased Contract that prohibit or condition the assignment of such Purchased Contract or allow the party to such Purchased Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Purchased Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (d) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to Purchaser of each Purchased Contract have been satisfied; (e) the Purchased Contracts shall be transferred and assigned to, and following the closing of the Sale remain in full force and effect for the benefit of, Purchaser, notwithstanding any provision in any such Purchased Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Purchased Contracts after such assignment to and assumption by Purchaser; and (f) upon Closing, in accordance with sections 363 and 365 of the Bankruptcy

Code, Purchaser shall be fully and irrevocably vested in all right, title and interest of each Purchased Contract.

15. All defaults or other obligations of the Debtors under the Purchased Contracts arising or accruing prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the Purchaser at the Closing or as soon thereafter as practicable by payment of the Cure Amounts (as defined below). To the extent that any counterparty to a Purchased Contract did not object to its Cure Amount by the Sale Hearing, such counterparty is deemed to have consented to such Cure Amount and the assignments of its respective Purchased Contracts to the Purchaser. The Purchaser shall be entitled to an adjustment of the Purchase Price from the Debtors for any Cure Amounts paid by the Purchaser for the Purchased Contracts pursuant to the terms of the Final APA.

16. Unless otherwise agreed and stated on the record at the Sale Hearing, Exhibit F to the Sale Motion, sent to counterparties of the Purchased Contracts, reflects the sole amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults under the Purchased Contracts (collectively, the "Cure Amounts"), and no other amounts are or shall be due in connection with the assumption by the Debtors and the assignment to Purchaser of the Purchased Contracts. In the event one or more agreements is added to or deleted from Exhibit F on or before the Closing, the Debtors will serve a notice of the amended Exhibit F on the counterparties to such Contracts and provide such counterparties with thirteen (13) days thereafter to object to the Cure Amount, unless such period is shortened by the Court. In the absence of any objection, upon passing of such thirteen (13) day period, such counterparties shall be deemed to have consented to the Cure Amount designated by the Debtors for their Contract

and the assignment of such Purchased Contract to the Purchaser, with such assignment effective, along with all other Purchased Contracts, as of the Closing Date.

17. Upon the Debtors' assignment of the Purchased Contracts to the Purchaser under the provisions of this Order and any additional orders of this Court and Purchaser's payment of any Cure Amounts pursuant to Paragraph 13 hereof, no default shall exist under any Purchased Contract, and no counterparty to any Purchased Contract shall be permitted (a) to declare a default by the Purchaser under such Purchased Contract or (b) otherwise take action against the Purchaser as a result of any Debtor's financial condition, bankruptcy or failure to perform any of its obligations under the relevant Purchased Contract. Each non-Debtor party to a Purchased Contract hereby is also forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or Purchaser, or the property of any of them, any default or Claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing, including those constituting Excluded Liabilities, or, against Purchaser, any counterclaim, defense, setoff or any other Claim asserted or assertable against the Debtors; and (ii) imposing or charging against Purchaser or its Affiliates any rent accelerations, assignment fees, increases or any other fees as a result of the Debtors' assumption and assignments to Purchaser of the Purchased Contracts. The validity of such assumption and assignments of the Purchased Contracts shall not be affected by any dispute between the Debtors and any non-Debtor party to a Purchased Contract relating to such contract's respective Cure Amount.

18. Except as provided in the Final APA or this Order, after the Closing, the Debtors and their estates shall have no further liabilities or obligations with respect to any Assumed Liabilities and all holders of such Claims are forever barred and estopped from

asserting such Claims against the Debtors, their successors or assigns, their property or their assets or estates.

19. The failure of the Debtors or Purchaser to enforce at any time one or more terms or conditions of any Purchased Contract shall not be a waiver of such terms or conditions, or of the Debtors' and Purchaser's rights to enforce every term and condition of the Purchased Contracts.

20. The San Leandro Leases. The Debtors are hereby authorized to assume and assign the (i) Commercial Lease dated as of August 29, 1995, by and between H.C. Crain, Jr. and Shirley Crain, and Foamex L.P, as amended, with respect to premises located at 2435 Polvorosa, San Leandro, CA 94577 ("San Leandro Lease No. 1"); and (ii) Commercial Lease dated as of August 29, 1995, by and between Dude, Inc., H.C. Crain, Jr. and Shirley Crain and Foamex L.P., as amended, with respect to the property located 2451-2495 Polvorosa, San Leandro, CA 94577 (collectively, the "San Leandro Leases") to the Purchaser pursuant to Section 365 of the Bankruptcy Code. The assignment of the San Leandro Leases shall not be effective, however, until the Purchaser, the Landlord, and the Debtors have executed a stipulation, in form and substance satisfactory to the Purchaser and the Landlord, which provides, *inter alia*, for the following:

(a) The Purchaser shall be obligated to perform the Debtors' obligations under the San Leandro Leases but shall have no obligations with respect to the Commercial Lease by and between Dude, Inc., as successor in interest to Crain Industries, Inc., as Landlord, and Crain Industries, Inc., as tenant, dated August 29, 1995 for the property located at 19201 S. Reyes Ave., Compton, CA 90221 (the "Compton Lease"), including any obligation to pay any cure amounts with respect thereto. The cross-default provisions in the San Leandro Leases shall be of no force

and effect with respect to defaults under the Compton Lease. The Purchaser assumes and will be fully liable for all of the Debtors' obligations pursuant to the San Leandro Leases (excluding obligations with respect to the Compton Lease), including all cure costs, without regard to the date the Purchaser takes possession of the leased premises. The assignment is without limitation to the Landlord's right to assert any additional amounts due or that any other default exists under the San Leandro Leases.

(b) The Debtors shall vacate and surrender the premises with respect to the Compton Lease on or before May 31, 2009. Subject to the foregoing, the Compton Lease shall be deemed rejected pursuant to section 365 of the Bankruptcy Code, effective as of May 31, 2009. The Debtors are hereby authorized to enter into such stipulation without further order of the Court.

21. Oracle USA, Inc. Agreements and/or Licenses. The Debtors, the Purchaser and Oracle USA, Inc. ("Oracle") will enter into an Assignment Agreement, which will be in form satisfactory to Oracle, and none of the agreements and/or licenses between Oracle (or one of its predecessors-in-interest) and one or more of the Debtors will be assumed and/or assigned to the Purchaser until the execution of said Assignment Agreement

22. Tempur World LLC Supply Agreements: In the event the Debtors' supply agreements with Tempur World LLC (the "Supply Agreements") are assumed and assigned, the Purchaser shall be fully liable for all of the Debtors' obligations thereunder, including but not limited to cure costs (which are yet to be determined), pursuant to the Supply Agreements. All of Tempur World LLC's rights are reserved regarding any and all claims under and with regard to the Supply Agreements

23. XTRA Leases. The Debtors have sought authority to assume and assign the leases described in XTRA's objection to Debtors' Notice of Debtors' Intent to Assume and Assign Certain Unexpired Leases and Executory Contracts and Setting Forth the Cure Amounts dated May 15, 2009 (Docket No. 425) (the "XTRA Leases"). The Debtors have acknowledged that $18,680.41 was owing under the XTRA Leases as of May 15, 2009 (the "May 15, 2009 Balance") and that additional obligations, if not paid in the ordinary course, will be owing as of the effective date of the assignment of the XTRA Leases. Notwithstanding any other provision of this Order, the Debtors are authorized to assume and assign the XTRA Leases, in toto, to the Purchaser upon satisfaction of all of the following conditions:

(a) The Debtors shall pay XTRA, in the ordinary course, obligations that accrue under the XTRA Leases up to and including the effective date of the assignment of the XTRA Leases;

(b) Purchaser shall pay XTRA, no event later than the effective date of the assignment of the XTRA Leases, all obligations owing under the XTRA Leases as of the effective date of the assignment of the XTRA Leases, including, without limitation, any portion of the May 15, 2009 Balance that has not been paid by Debtors plus any additional obligations that have accrued under the XTRA Leases through the effective date of the assignment of the XTRA Leases;

(c) On or before the effective date of the assignment of the XTRA Leases to Purchaser, Purchaser shall deliver to XTRA: (i) evidence of the insurance required under the XTRA Leases (naming XTRA as an additional insured and loss payee, as required by the XTRA Leases); and (ii) a $30,800.00 security deposit; and

(d) Upon the effective date of the assignment of the XTRA Leases to Purchaser, the $30,800.00 security deposit that Debtors paid to XTRA under the XTRA Leases prior to the commencement of the Debtors' bankruptcy shall be transferred to Purchaser and deemed delivered to XTRA in satisfaction of subparagraph (c), above.

24. The ACE Policies and Agreements. Notwithstanding anything to the contrary in this Order or the Final APA:

(a) Subject to the satisfaction of all of the conditions set forth in clause (b) below,

(i) the Debtors are hereby authorized to assume, pursuant to 11 U.S.C. § 365, all insurance policies issued by ACE American Insurance Company and/or its affiliates (the "ACE Companies") to one or more of the Debtors and/or their predecessors and all related program, collateral and security, claims servicing and other agreements between one or more of the ACE Companies and the Debtors (collectively, the "ACE Policies and Agreements");

(ii) the Debtors are hereby authorized to assign the ACE Policies and Agreements to the Purchaser and to enter into an assumption agreement by and among the Debtors, the Purchaser and the ACE Companies with respect to such assignment; and

(iii) effective upon the assignment of ACE Policies and Agreements, the Debtors' rights and interests in any and all collateral and security provided by the Debtors to the ACE Companies (including, without limitation, cash collateral, letters of credit and the proceeds thereof) shall be transferred and assigned to the Purchaser, and such collateral and security shall secure the Purchaser's obligations and liabilities under the ACE Policies and Agreements.

(b) The assignment of the ACE Policies and Agreements shall not be effective unless and until the Debtors and Purchaser have satisfied all of the following conditions precedent to such assignment:

(i) the ACE Companies shall have consented in writing to the assignment of the ACE Policies and Agreements to the Purchaser;

(ii) the Purchaser, the Debtors and the ACE Companies shall have executed an assumption agreement, in form and substance satisfactory to the ACE Companies and the Purchaser;

(iii) the Purchaser shall have provided the ACE Companies with financial, underwriting and other information, satisfactory to the ACE Companies;

(iv) the Purchaser shall have satisfied the ACE Companies' credit and underwriting requirements, as the ACE Companies shall determine in their sole discretion; and

(v) the Purchaser shall have provided to the ACE Companies a draft of a replacement letter of credit, to be issued subsequent to the effective date, in form, amount and substance, and issued by a financial institution acceptable to the ACE Companies in their sole discretion. Additionally, the issuing bank for the existing letters of credit shall have provided a letter of assurance confirming that the existing letters of credit will remain as valid letters of credit until issuance of the replacement letter of credit.

(c) Upon satisfaction of the conditions set forth in paragraph (b) above:

(i) the ACE Policies and Agreements shall be deemed to be "Purchased Assets" ;

(ii) Purchaser shall assume all liabilities of the Sellers under the ACE Policies and Agreements arising at any time (whether before or after the Closing (as such term is defined in the Purchase Agreement)) and shall have all of the rights and benefits under the ACE Policies;

(iii) Upon the assumption and assignment of the ACE Policies and Agreements to the Purchaser, the Debtors have no further obligations thereunder pursuant to section 365(k) of the Bankruptcy Code provided that, notwithstanding the foregoing, (1) the Debtors will cooperate with the ACE Companies in providing information reasonably necessary for premium audits or claims handling under the ACE Policies and (2) all right, title and interest of the Debtors in the ACE Policies and Agreements, the collateral thereunder and the proceeds thereof shall terminate; and

(iv) All letters of credit and other collateral and security provided by the Debtors to ACE shall continue to secure all obligations and liabilities of the insureds and/or the Purchaser to ACE under the ACE Policies and Agreements.

**Prohibition of Actions Against the Purchaser**

25. Except for the Assumed Liabilities and as set forth in paragraph 29 of this Order, or as otherwise expressly provided for in this Order or the Final APA, the Purchaser shall not have any liability or other obligation of the Debtors arising under or related to any of the Purchased Assets. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Final APA, the Purchaser shall not be liable for any Claims against the Debtors or any of its predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties, intercompany loans and receivables between the Debtors and any Purchased Subsidiary or Purchased JV, Environmental Liabilities, and any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Purchased Assets prior to the Closing.

26. Except with respect to Permitted Liens and Assumed Liabilities, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors, holding Liens, Claims or other interests of any kind or nature whatsoever against or in all or any portion of the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' Business prior to the

Closing Date or the transfer of the Purchased Assets to the Purchaser are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Purchased Assets to the Purchaser in accordance with the terms of the Final APA and this Order.

27. The Purchaser has given substantial consideration under the Final APA for the benefit of the Debtors, their estates and creditors. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential Claims and Liens pursuant to this Order, including under Paragraphs 25-26 hereof, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Liens against or interests in, or Claims against any of the Debtors or any of the Purchased Assets, other than holders of Liens or Claims relating to the Assumed Liabilities. The consideration provided by the Purchaser for the Purchased Assets under the Final APA is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

28. Other than as set forth in the PBGC Stipulation (as defined below), notwithstanding any provision in the Final APA to the contrary, nothing therein or in this Order shall be deemed to impair valid outstanding liabilities of any affiliate of the Debtors whose equity is being sold to the Purchaser.

**Other Provisions**

29. Nothing in this Order is or shall be deemed to effectuate a release or waiver of any claims or causes of action of any lender under the First Lien Term Loan Credit Agreement or any First Lien Term Loan Document against the Agent or any other lender thereunder, other than any claims or causes of action relating to the ability of the Agent to credit bid the claims of all of such lenders and the Sale and transfer of the Purchased Assets to the Purchaser in accordance with the Final APA.

30. At and simultaneous with the Closing, the Sellers shall (i) irrevocably pay (or cause the Purchaser to pay) to the DIP Agent an amount in cash sufficient to satisfy and discharge in full all obligations under the DIP Loan Agreement and the DIP Documents (as defined in the Final DIP Order (other than in respect of the Purchaser DIP Claim and as set forth in Section 7.14 of the Final APA), and (ii) execute and deliver in favor of the DIP Agent and the lenders under the DIP Loan Agreement, a valid and binding termination and release agreement in accordance with Section 4.3.2 of the Final DIP Order.

31. Notwithstanding any other provision in this Order or in the Final APA, or any related documents to the contrary, unless these chapter 11 cases are concluded by the entry of an order dismissing these cases or by an order confirming a chapter 11 plan, all proceeds of the Seller Professional Fee Escrow and the Wind-Down Escrow shall be remitted to the representative of the Debtors' estates to be disbursed as a single fund pursuant to the distribution priority provisions of the Bankruptcy Code. No distributions shall be made from the Seller Professional Fee Escrow and the Wind-Down Escrow absent further order of the Court.

32. The Stipulation and Order By and Between Debtors, Certain Mexican Subsidiaries of the Debtors, and Pension Benefit Guaranty Corporation (the "PBGC Stipulation"), annexed hereto as Exhibit B, shall be "so ordered" by the Court and is an integral component of the Sale because, based on the terms of the PBGC Stipulation, the Purchaser shall acquire the stock of the Mexican Subsidiaries (as defined in the PBGC Stipulation).

33. The consideration provided by the Purchaser to the Debtors pursuant to the Final APA for the Purchased Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform

Fraudulent Conveyance Act and under the laws of the United States, any state, territory, possession or the District of Columbia.

34. The transactions contemplated by the Final APA are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and such Sale are duly stayed pending such appeal. The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

35. Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (i) these chapter 11 cases, (ii) any subsequent chapter 7 case into which any such chapter 11 case may be converted, or (ii) any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the provisions of the Final APA or the terms of this Order.

36. For cause show, pursuant to Bankruptcy Rules 6004(h) and 7062(g), this Order shall not be stayed, shall be effective immediately upon entry, and the Debtors and Purchaser are authorized to close the Sale immediately upon entry of this Order.

37. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

38. The failure specifically to include any particular provision of the Final APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Final APA be authorized and approved in its entirety; provided, however, that this Order shall govern if there is any inconsistency between the Final APA

(including all ancillary documents executed in connection therewith) and this Order. Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

39. The Final APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

40. The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Final APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets to Purchaser; (b) interpret, implement and enforce the provisions of this Order; (c) protect Purchaser against any Liens, Claims or other interest in or against the Sellers or the Purchased Assets of any kind or nature whatsoever, attaching to the proceeds of the Sale, and (d) enter any orders under section 363 and 365 of the Bankruptcy Code with respect to the Purchased Contracts.

41. Any amounts payable by the Debtors under the Final APA or any of the documents delivered by the Debtors in connection with the Final APA, including, but not limited to the Reimbursable Expenses, shall be paid in the manner provided in the Final APA, without further order of this Court, shall be allowed administrative claims in an amount equal to such payments in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code, shall have the other protections provided in the Bid Procedures Order, and shall not be discharged, modified

or otherwise affected by any reorganization plan for the Debtors, except by an express agreement with Purchaser, its successors, or assigns.

42. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

43. Nothing in this Order or the Final APA (a) releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order and (b) authorizes the transfer or assignment to Purchaser of any license, permit, registration, authorization, or approval of or with respect to a governmental unit without Purchaser's complying with all applicable legal requirements under non-bankruptcy law governing such transfers or assignments.

44. To the extent that this Order is inconsistent with any prior order or pleading with respect to the Sale Motion in these chapter 11 cases, the terms of this Order shall govern.

DATE: May 27, 2009
Wilmington, Delaware

UNITED STATES BANKRUPTCY JUDGE