IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FOAMEX INTERNATIONAL INC., *et al.*,[1] | ) | Case No. 09-10560 (KJC) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Hearing Date: January 20, 2010 at 2:00 p.m.** |
| | ) | **Objection Deadline: December 11, 2009 at 4:00 p.m.** |

## DEBTORS' MOTION FOR AN ORDER, PURSUANT TO SECTIONS 105(a) AND 1112(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 1017(a), DISMISSING THEIR CHAPTER 11 CASES

Foamex International Inc., Foamex L.P., Foamex Latin America, Inc., Foamex Asia, Inc., FMXI, LLC, Foamex Carpet Cushion LLC, Foamex Mexico, Inc., and Foamex Canada Inc., debtors and debtors-in-possession (collectively, the "Debtors"), hereby submit this motion (the "Motion") for entry of an order, pursuant to sections 105(a) and 1112(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and Rule 1017(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the dismissal of their chapter 11 cases. In support of this Motion, the Debtors respectfully represent as follows:

### JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a) and 1112(b) of the Bankruptcy Code, and Bankruptcy Rule 1017(a).

### BACKGROUND

2. On February 18, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Foamex International Inc. (3908); Foamex L.P. (5617); Foamex Latin America, Inc. (4053); Foamex Asia, Inc. (9431); FMXI, LLC (9496); Foamex Carpet Cushion LLC (2280); Foamex Mexico, Inc. (8685); and Foamex Canada Inc. (5846).

3. At the "first day" hearing in these cases (the "Bankruptcy Cases"), the Court entered an Order pursuant to Bankruptcy Rule 1015(b) providing for the joint administration of these cases and consolidation for procedural purposes only.

4. An official committee of unsecured creditors (the "Committee") was appointed on February 27, 2009 and has been active in these cases since that time.

5. On March 25, 2009, the Debtors filed the *Motion for Entry of (i) an Order (a) Approving Bidding Procedures in Connection with Sale of Substantially All of the Debtors' Assets, (b) Approving Break-Up Fee and Expense Reimbursement, (c) Scheduling an Auction and Hearing to Consider the Proposed Sale and Approving the Form and Manner of Notice Thereof, and (d) Establishing Procedures Relating to the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (ii) an Order (a) Approving the Proposed Sale, (b) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (c) Granting Certain Related Relief* [D.I. 208] (the "Sale Motion"). On April 9, 2009, the Court entered an order approving bidding procedures, scheduling an auction and sale hearing, and establishing procedures relating to the assumption and assignment of executory contracts [D.I. 305] (the "Bidding Procedures Order").

6. Following entry of the Bidding Procedures Order, the Debtors' management and professionals continued to extensively market and solicit interest in the sale of substantially all of the Debtors' assets (the "Sale") from third parties. On May 19, 2009, the Debtors conducted an auction (the "Auction"). At a hearing on May 21, 2009 (the "Sale Hearing"), the Debtors sought the Court's approval of the Sale to Foam Holdings, LLC, an entity formed by Wayzata Investment Partners LLC (together, with Foam Holdings, LLC, "Wayzata").

7. At the Sale Hearing, the Court instructed the Debtors to resume the Auction. Wayzata, MP Foam DIP LLP (the "Stalking Horse Bidder"), The Bank of New York Mellon

2

("BNYM"), as administrative and collateral agent under the Debtors' prepetition senior secured first lien term loan facility dated as of February 12, 2007 (as amended, the "First Lien Term Loan Agreement"), and RBF Capital LLC were each invited to attend and participate in bidding at the continued Auction.

8. At the conclusion of the continued Auction, the Debtors selected the credit bid, submitted by BNYM, at the direction of the Stalking Horse Bidder and the Required Lenders under the First Lien Term Loan Agreement (as defined therein), as the highest and otherwise best offer. That bid was in the amount of $155 million, with a cash out option for non-credit bidding lenders under the First Lien Term Loan Agreement at an implied value of $146.5 million (the "Credit Bid").

9. On May 26, 2009, the Debtors' board of directors approved the Sale pursuant to the Credit Bid and, as such, the Debtors sought the Court's approval thereof. On May 27, 2009, the Court entered an Order approving the Sale pursuant to the Credit Bid [D.I. 483].

10. The closing of the Sale to the Stalking Horse Bidder, now known as Foamex Innovations, Inc. (the "Purchaser") occurred on June 12, 2009. Following the Sale, the Debtors' estates consisted of the following assets: (i) $5,062,637 in a wind-down escrow (the "Wind-Down Escrow"), which funds would be used to pay miscellaneous wind-down costs of the Debtors as well as administrative priority claims; (ii) $1,523,966 in a seller's professional fee escrow (the "Professional Fee Escrow"), which funds would be used to pay the professional fees of the Debtors' bankruptcy counsel, Akin Gump Strauss Hauer & Feld, LLP and Cozen O'Connor[2]; (iii) $3,102,900 in a Houlihan Loukey fee escrow (the "HL Fee Escrow"), which funds would be used to pay the amounts due Houlihan Loukey for its fees; and (iv) $333,000 in

---

[2] The fees of other professionals, including Committee counsel, have been or will be paid from the Wind-Down Escrow.

3

unencumbered funds, which are proceeds of certain unencumbered assets of the Debtors which were included in the Sale (the "Unencumbered Assets") (collectively, the "Remaining Assets").

11. On July 16, 2009, the Court entered an Order (the "Administrative Bar Date Order") [D.I. 593] which, inter alia, (i) established August 20, 2009 (the "Administrative Bar Date") as the deadline for the filing of written requests for payment of administrative expense claims that accrued between the Petition Date and July 1, 2009 and (ii) approved a form of notice of the Administrative Bar Date. The approved form of notice of the Administrative Bar Date Order (the "Administrative Bar Date Notice") was provided by mail by the Debtors in accordance with the procedures outlined in the Administrative Bar Date Order.

12. The Debtors, with the assistance of their professionals, have reviewed all filed requests for payment of administrative expenses (collectively, and including any supporting documentation thereto, the "Administrative Expense Requests") to determine the validity of all Administrative Expense Requests asserted against the Debtors' estates. The Debtors have resolved many of these Administrative Expense Requests by agreement with the respective claimants. Based upon their review to date, the Debtors have determined that certain other Administrative Expense Requests are objectionable and that these Administrative Expense Requests should be disallowed and expunged, deemed to be satisfied, or reclassified.[3]

13. On September 30, 2009, the Debtors filed the *First Omnibus Objection (Non-Substantive to Certain Administrative Expense Claims Pursuant to Section 502 of the Bankruptcy Code, Rules 3007 and 9014 of the Federal Rules of Bankruptcy Procedure and Bankr. D. Del. L.R. 3007-1* (the "First Administrative Expense Claim Objection"). [D.I. 671]. A hearing on the First Administrative Expense Claim Objection was held on November 5, 2009, and the Court granted such Objection.

---

[3] Dow Chemical Company ("Dow") filed the largest administrative expense claim, against debtor Foamex L.P., in the amount of $8,468,661.96. The Purchaser assumed this liability, however, leaving no claim against Foamex L.P.

14. The Debtors have made disbursements from the Wind-Down Escrow, the Professional Fee Escrow, and the HL Fee Escrow pursuant to Orders of the Court authorizing same. In addition, the Unencumbered Assets have been exhausted by payment of valid administrative expense priority claims which have arisen in the ordinary course of the Debtors' business.

15. The Remaining Assets now consist of the following:

- Wind-Down Escrow: $3,792,519.74
- Professional Fee Escrow: $228,414.91
- HL Fee Escrow: $0.00
- Unencumbered Assets: $0.00[4]

16. All professionals have already submitted their final fee applications to the Court and the appointed fee auditor. Accordingly, the hearings on both the final fee applications as well as this Motion are scheduled for the omnibus hearing date of January 20, 2010 (the "Hearing Date").

17. To the extent any of the Remaining Assets are not completely depleted through payment of administrative expenses, these assets will be turned over to BNYM, as administrative and collateral agent under the First Lien Term Loan Agreement. Specifically, the Debtors contemplate that all non-professional fee administrative expense claims will be paid prior to the Hearing Date, the unpaid portion of allowed professional fee claims will be paid as soon as practicable after the Hearing Date, and the balance remaining in the Wind-Down Escrow, with the exception of a reserve of $300,000.00 which may be necessary in order for the Debtors to pay certain miscellaneous wind-down expenses that may arise after the Hearing Date, such as

---

[4] As of the date hereof, the account containing the Unencumbered Assets has a balance of approximately $70,000. There are issued checks outstanding, however, which will exhaust these remaining funds before the dismissal of these cases.

5

fees for the preparation of final tax returns and to dissolve the Debtors (the "Escrow Reserve"), will be promptly remitted to BNYM.

18. The Debtors propose that the Escrow Reserve will be used only for the limited purpose of paying wind-down expenses arising subsequent to dismissal of these cases, and for no other purpose. Any funds in the Escrow Reserve that are not used by the Debtors in payment of wind-down expenses on or before September 30, 2010 shall be remitted to BNYM.

## RELIEF REQUESTED

19. By this Motion, the Debtors respectfully request that the Court enter an order, pursuant to sections 105(a) and 1112(b) of the Bankruptcy Code and Bankruptcy Rule 1017(a), dismissing these chapter 11 cases.[5]

## BASIS FOR RELIEF REQUESTED

20. Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

21. Section 1112(b) of the Bankruptcy Code provides that "on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested…dismissal is not in the best interests of creditors and the estate, the court shall…dismiss a case under [chapter 11 of the Bankruptcy Code]…if the movant establishes cause." 11 U.S.C. § 1112(b)(1). The determination of cause and the decision to dismiss a chapter 11 bankruptcy case pursuant to section 1112(b) rests within the sound discretion of the court. *See In re Nugelt, Inc.*, 142 B.R. 661, 665 (Bankr. D. Del. 1992) (stating

---

[5] Alternatively, the Debtors seek dismissal of these chapter 11 cases under section 305(a) of the Bankruptcy Code, which provides, in relevant part, that "[t]he court, after notice and a hearing, may dismiss a case under [chapter 11 of the Bankruptcy Code]…at any time if – (1) the interests of creditors and the debtor would be better served by such dismissal." 11 U.S.C. § 305(a)(1). As set forth more fully herein, the dismissal of the Debtors' chapter 11 cases is in the best interests of the Debtors, their estates and creditors. Accordingly, the Debtors respectfully submit that the dismissal of these cases is also warranted under section 305(a) of the Bankruptcy Code.

that "[c]ourts have wide latitude in determining whether cause exists to convert or dismiss" a chapter 11 bankruptcy case); *In re Young*, 76 B.R. 376, 378 (Bankr. D. Del. 1987).

22. Section 1112(b)(4) of the Bankruptcy Code identifies certain examples of "cause" for dismissal of a chapter 11 case, including the "absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4). A bankruptcy court, however, is not constrained by those enumerated examples and may find "cause" based on the facts and circumstances of the particular chapter 11 case. *See In re Nugelt, Inc.*, 142 B.R. at 665. The legislative history of section 1112(b) of the Bankruptcy Code also indicates that the list set forth in sections 1112(b)(4)(A)-(P) of the Bankruptcy Code is nonexclusive, such that a bankruptcy court has the ability to dismiss a chapter 11 case for any reason cognizable to its equity powers. *See* H.R. Rep. No. 595, 95th Cong., 2d. Sess. 405-06 (1978); *see also Official Comm. of Unsecured Creditors v. Nucor Corp. (In re SGL Carbon Corp.)*, 200 F.3d 154, 160 (3d Cir. 1999); *Carolin Corp. v. Miller*, 886 F.2d 693, 699 (4th Cir. 1993).

23. The Debtors submit that sufficient cause exists for the dismissal of their chapter 11 cases, as they have terminated their business operations and liquidated or disposed of all of their assets through these proceedings. As noted above, since the Petition Date, the Debtors have preserved and maximized the value of their estates for the benefit of creditors. In furtherance of this goal, the Debtors sold substantially all of their operations and assets to the Purchaser.

24. In connection with the Sale, the Purchaser assumed substantially all of the Debtors' operating liabilities, took an assignment of a majority of the Debtors' executory contracts and unexpired leases, and acquired all potential causes of actions maintained by the Debtors under chapter 5 of the Bankruptcy Code, including preference actions. With the Remaining Assets, the Debtors have satisfied all legitimate, timely filed Administrative Expense Requests. In addition, through the first day and second day orders, including the critical vendor

order, and the assumption of executory contracts of unexpired leases under the Sale Motion, a significant portion of the general unsecured claims and substantially all of the priority unsecured claims have been paid in full.

25. Based on the foregoing, the Debtors have determined, in their business judgment, that there is no reasonable likelihood of their rehabilitation and that they are unable to effectuate a chapter 11 plan of liquidation, as there are no funds available for distribution to unsecured creditors and no remaining assets to be liquidated or recovered for the benefit of the Debtors' estates. There is no prospect for distributions to general unsecured creditors, aside from those liabilities which the Purchaser has assumed pursuant to the Sale. In addition, all or substantially all of the Debtors' employees have been employed by the Purchaser.

26. Because they have no remaining assets to administer, the Debtors submit that conversion of their chapter 11 cases to cases under chapter 7 of the Bankruptcy Code would only create unnecessary administrative expenses, without enhancing the prospect for recoveries, and is therefore unwarranted. Dismissal of these chapter 11 cases, on the other hand, will eliminate the accrual of any administrative expense obligations and bring closure to these cases in a timely and efficient manner. Accordingly, the Debtors submit that sufficient cause exists to dismiss these chapter 11 cases, and that doing so is in the best interests of the Debtors' estates and creditors.

## NOTICE

27. Notice of this Motion will be provided to: (i) the United States Trustee; (ii) counsel to the Committee; (iii) the Debtors' prepetition lenders; (iv) the Debtors' postpetition lenders; and (v) all parties that have requested notice pursuant to Rule 2002-1(b) of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware. Additionally, the Debtors will serve a one-page notice of the filing of this

Motion upon all known creditors, as identified in the consolidated list of creditors filed by the Debtors on the Petition Date. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that Court enter an order, substantially in the form attached hereto, dismissing these chapter 11 cases and granting such other and further relief to the Debtors as this Court deems just and proper.

Dated: November 18, 2009

COZEN O'CONNOR

_____
Mark E. Felger (No. 3919)
1201 North Market Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 295-2087
Facsimile: (302) 295-2013

- and –

AKIN GUMP STRAUSS HAUER & FELD, LLP
Ira S. Dizengoff, Esquire
Abid Qureshi, Esquire
Brian D. Geldert, Esquire
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel for Debtors and Debtors in Possession*